WILLIAM A. CARSON et al., as Trustees in Bankruptcy of LEONARD S. ZARTMAN et al., Individually and as Copartners under the Firm Name of G. E. ZARTMAN & COMPANY, Appellants, *v.* FEDERAL RESERVE BANK OF NEW YORK, Respondent.

220

(Argued June 4, 1930; decided July 8, 1930.)

*Arthur E. Sutherland, Samuel B. Dicker* and *Earl W. Murray* for appellants. The defendant as payee and holder of the two dishonored drafts drawn by the insolvent firm was a creditor thereof and as such is liable for obtaining a preference over other creditors of the same class. (*People* v. *Merchants Bank,* 78 N. Y. 269; *Matter of Veler,* 249 Fed. Rep. 633; *Federal Reserve Bank* v. *First Nat. Bank,* 277 Fed. Rep. 300; *Mercantile Trust Co.* v. *Schlafly,* 299 Fed. Rep. 202; 266 U. S. 614; *Marine Trust Co.* v. *Lauria,* 213 App. Div. 64; 244 N. Y. 577.) The defendant was a creditor of the insolvent firm as defined in the United States Bankruptcy Act and received a voidable preference. (Bankruptcy Act, § 60, subds. A & B.) The indorsements on the checks are inconsistent with the theory that the defendant was a mere collection agency. (*Marine Trust Co.* v. *Lauria,* 213 App. Div. 64; 244 N. Y. 577; *Interstate Trust Co.* v. *United States Nat. Bank,* 67 Colo. 6; *National Bank* v. *Bossemeyer,* 101 Neb. 96; *Burton* v. *United States,* 196 U. S. 283; *Downey* v. *National Exch. Bank,* 96 N. E. Rep. 403; *Auto & Accessories Mfg. Co.* v. *Merchants' Nat. Bank,* 116 Md. 179; *Jefferson Bank* v. *Merchants' Refrigerating Co.,* 236 Mo. 407; *Krafft* v. *Citizens' Bank,* 139 App. Div. 610; *King* v. *Bowling Green Trust Co.,* 145 App. Div. 398; *Lyons* v. *Union Exch. Nat. Bank,* 150 App. Div. 493.)

Regulation " J " of the Federal Reserve Board and defendant's circular letter, No. 728, do not make defendant a collection agent only. (*Douglas* v. *Federal Reserve Bank*, 271 U. S. 489; *Interstate Trust Co.* v. *U. S. Nat. Bank*, 67 Colo. 6; *Pastene* v. *Irving Nat. Bank*, 249 N. Y. 272; *National Park Bank* v. *Seaboard Bank*, 114 N. Y. 28.)

*Colin McLennan, Keith D. Poland* and *Walter S. Logan* for respondent. The defendant was never the legal or beneficial owner of a claim against the insolvent firm; hence the payment to it cannot be recovered from the defendant as a voidable preference under the Federal Bankruptcy Act. (*Marine Trust Co.* v. *Lauria*, 213 App. Div. 64; 244 N. Y. 577; *Matter of Veler*, 249 Fed. Rep. 633; *Richardson* v. *Shaw*, 209 U. S. 365; *Taylor* v. *Carraway*, 282 Fed. Rep. 876; *Keystone Warehouse* v. *Bissell*, 203 Fed. Rep. 652; *Matter of Ponzi*, 4 Fed. Rep. [2d] 25; 268 U. S. 691; *Rubenstein* v. *Lottow*, 220 Mass. 156; *Matter of Mosher*, 224 Fed. Rep. 739; *Matter of Kayser*, 177 Fed. Rep. 383; *Matter of Baar*, 213 Fed. Rep. 629; *Dean* v. *Davis*, 242 U. S. 438; *Hagan* v. *Mc Niel*, 253 Fed. Rep. 716; *Jump* v. *Bernier*, 221 Mass. 241; Collier on Bankruptcy, 840-g.) Defendant was not the beneficial owner of any claim against the insolvent firm, for in collecting the checks it was merely the agent of its member banks. (*Early* v. *Federal Reserve Bank*, 50 Sup. Ct. Rep. 235; 30 Fed. Rep. [2d] 198; *Federal Reserve Bank* v. *Malloy*, 291 Fed. Rep. 763; 264 U. S. 160; *Fergus County* v. *Federal Reserve Bank*, 75 Mont. 582; *Transcontinental Oil Co.* v. *Federal Reserve Bank*, 172 Minn. 258.) The relation of agency between the defendant and the indorsing banks is indicated by the form of the indorsements on the checks and the letters of transmittal which accompanied the checks. (*First Nat. Bank* v. *Stengel*, 185 App. Div. 906; 227 N. Y. 659; *Matter of Jarmulowsky*, 243 Fed Rep. 633; *Stark* v. *Public Nat. Bank*, 123 Misc. Rep. 647; *Richardson* v. *Louisville Bank-*

*ing Co.*, 94 Fed. Rep. 442; *Scott v. Ocean Bank*, 23 N. Y.
289; *Balbach v. Frelinghuysen*, 15 Fed. Rep. 675; *Beal v.
City of Somerville*, 50 Fed. Rep. 647; *Moors v. Goddard*,
147 Mass. 287; *National Park Bank v. Seaboard Bank*,
114 N. Y. 28; *Bank of America v. Waydell*, 187 N. Y. 115;
*Thomas v. Supervisors*, 115 N. Y. 47; *Peoples Nat. Bank
v. Moore*, 25 Fed. Rep. [2d] 599.) Under the provisions
of the contract between defendant and its member banks
the agency relationship continues until the defendant
receives final payment for checks in actual funds. The
receipt of the remittance drafts was not final pay-
ment in actual funds and, therefore, did not change
that relationship or constitute the defendant a creditor
of Zartman & Company. (*Thomas v. Supervisors*, 115
N. Y. 47; *Peoples Nat. Bank v. Moore*, 25 Fed. Rep. [2d]
599; *U. S. Fidelity & Guaranty Co. v. Forest County State
Bank*, 227 N. W. Rep. 27; *Burton v. United States*, 195
U. S. 283; *Bank of America v. Waydell*, 186 N. Y. 115;
*First Nat. Bank v. Stengel*, 169 N. Y. Supp. 217; 185
App. Div. 906; 277 N. Y. 659.) The defendant is under
no liability as an agent, for it accounted to its principals
before the payment assumed its voidable character.
(*Nat. Park Bank v. Seaboard Bank*, 44 Hun, 49; 114
N. Y. 28; *Thompson v. St. Nicholas Bank*, 113 N. Y. 325;
*Nostrand v. Ditmis*, 127 N. Y. 355; *Stanwix v. Leonard*,
125 App. Div. 299; *Cohen v. Barry*, 108 N. Y. Supp. 573;
*Mountain Lumber Co. v. Davis*, 9 Fed. Rep. [2d] 478;
11 Fed. Rep. [2d] 219; *Insurance Co. v. Fourth Nat. Bank*,
14 Fed. Rep. [2d] 131; *Wilson v. Mitchell-Woodbury Co.*,
214 Mass. 514; *Grandison v. Robertson*, 231 Fed. Rep.
685.)

CARDOZO, Ch. J. Trustees in bankruptcy are seeking
to recapture moneys collected by the defendant, a Federal
Reserve bank, with notice that a preference among
creditors might be an effect of the collection.

G. E. Zartman & Company were engaged for many

years in the business of private bankers at Waterloo, New York. On May 16 and 17, 1927, there came into the possession of the defendant, the Federal Reserve Bank in the Second Federal Reserve District, 157 checks drawn on the Zartman bank for sums amounting in the aggregate to $15,271.56. These checks, drawn by Zartman depositors in favor of various payees, had been indorsed by the payees to banks, thirty-seven in number, members of the Federal Reserve banking system, and by these indorsed and transmitted to the defendant. The indorsements by the member banks show diversities of form, some being simply to the order of the Federal Reserve Bank of New York, some to the order of any bank, banker or trust company, some to the order of any bank or banker, and some to the order of any Federal Reserve bank. Accompanying the checks, when received by the defendant, were letters of remittance. In these the member banks gave notice to the defendant that the checks were inclosed " for credit," or, more commonly, for " collection and credit," " collection and return," or " collection and remittance." The defendant pursuant to this mandate caused the checks to be presented for payment to the Zartman bank, the drawee named therein. In response to this demand, it received two drafts, one for $8,699.25, the other for $6,572.27, drawn by the Zartman bank in Waterloo upon the American Exchange Irving Trust Company of New York. These drafts, received by the defendant on May 18 and 19, were presented to the trust company for payment on May 20 and again on May 21. On each presentation payment was refused on the ground that the drafts had been drawn by Zartman against uncollected funds. Thereupon, on May 23, the defendant's manager went to Waterloo and made demand upon Zartman that the drafts be paid in cash. There is no occasion to recite the conversation that ensued. Enough for present purposes that what was said might reasonably be found by the triers of the facts to have been

notice to the manager that Zartman was insolvent. After a delay of a few hours there was paid to the defendant in cash the sum of $10,363.93. The following day, May 24, the doors of the Zartman bank were closed for business, and have never been reopened. A petition in bankruptcy, filed on June 27, was followed by an adjudication of bankruptcy and the appointment of trustees. The trustees are suing to recover the cash paid to the defendant on May 23 as a voidable preference under the provisions of the Federal statute.

We turn back at this point to state the defendant's use of the proceeds of collections. Each of the member banks had an account with the defendant, an account exacted by the statute (Federal Reserve Act, 38 U. S. Stat. pp. 251, 270, § 19) as one of the incidents of membership. These accounts were credited on May 19 and 20 with the amount of the Zartman drafts, i. e., the drafts drawn on the trust company, which were supposed, when received by the defendant, to be equivalent to cash. As soon as notice came that these drafts had been dishonored, the entry was reversed. Later, on May 31, the credit was re-established to the extent of $10,363.93, the cash payment then in hand, each of the thirty-seven banks being allotted its appropriate share. Before the bankruptcy petition, the banks had withdrawn from their deposit accounts in the usual course of business moneys equal to the balances in their favor at the date of the contested credits, though they had also made new deposits which kept the daily balances at a level nearly uniform. If the first payments out of the accounts be appropriated to the first receipts, all moneys collected from the bankrupts had been remitted by the defendant to the thirty-seven member banks, its correspondents and depositors.

The trial judge left it to the jury to say whether the collections had been made by the defendant as agent or as owner. The jury found for the plaintiff, thus holding by their verdict that the collection was as owner. The

Appellate Division held as a matter of law that the collection was as agent, basing its holding in large degree upon an agreement yet to be considered between the defendant and its members. The collection having been made as agent, the conclusion was thought to follow that the agent was not liable since it had settled with its principals before the right of reclamation had been perfected by the bankruptcy.

We think the defendant was an agent and not an owner in its receipt of the Zartman drafts and the substituted moneys. How the 157 checks were indorsed by the payees when deposited with the member banks, the record does not tell us. The problem to be solved, however, is not one as to the relation between the member banks and their depositors. It is a problem as to the relation between those banks and the defendant. We assume that the form of the indorsements, if not qualified by agreement, would have passed to the defendant such title, if any, as belonged to the indorsers (*Federal Reserve Bank* v. *Malloy*, 264 U. S. 160, 164; *City of Douglas* v. *Federal Reserve Bank*, 271 U. S. 489; *Equitable Trust Co.* v. *Rochling*, 275 U. S. 248; *Heinrich* v. *First Nat. Bank*, 219 N. Y. 1). An agreement, however, is in existence, the terms thereof prescribed by regulations adopted by the Federal Reserve Board under authority conferred by the provisions of the statute. We must look to this agreement to discover the relation between the defendant and its members in the process of collection.

By the Federal Reserve Act, as first enacted in 1913, a reserve bank was authorized to collect only those checks which were drawn on member banks and which were deposited by a member bank or another reserve bank or the United States (*Farmers Bank* v. *Federal Reserve Bank*, 262 U. S. 649, 654). Even then, however, the regulations of the Board provided: " In handling items for member banks, a Federal Reserve Bank will act as agent only " (Circular No. 1 of 1916, Federal Reserve Board Report of

1916, p. 153, note; Federal Reserve Bulletin, May, 1916, pp. 259, 260). The statute was amended in September, 1916 (§ 13) (39 Stat. 752), so as to authorize a reserve bank to receive for collection from any member checks drawn on non-member banks located in the district. The Board renewed its order that the relation should be one of agency (Regulation J, subd. 7, Federal Reserve Board, Report of 1916, p. 171). In 1917 the statute was again amended, this time by a provision that "solely for the purposes of exchange or of collection," a reserve bank may receive from a non-member bank or trust company checks payable upon presentation, upon condition that such non-member bank or trust company maintain an adequate balance with the reserve bank of its district (Act of June 21, 1917, ch. 32, § 4; 40 Stat. 232, 234; cf. 262 U. S. at p. 655). Collections were thus permissible both for members and for non-members.

In the setting of this statute, Regulation J (series of 1924) was adopted by the Board, and is now to be construed. It recites (in terms substantially the same as those of earlier regulations) that the Board, " desiring to afford both to the public and to the various banks of the country a direct, expeditious and economical system of check collection and settlement of balances, has arranged to have each Federal reserve bank exercise the functions of a clearing house and collect checks for such of its member banks as desire to avail themselves of its privileges," to which is added a recital that like privileges will be afforded to non-member banks and trust companies qualifying in certain ways. It then proceeds to a statement of the terms and conditions on which business may be done. " The Federal Reserve Board hereby authorizes the Federal reserve banks to handle such checks subject to the following terms and conditions; and each member and nonmember clearing bank which sends checks to any Federal reserve bank shall by such action be deemed (a) to authorize the Federal reserve banks to handle

such checks subject to the following terms and conditions, (b) to warrant its own authority to give the Federal reserve banks such authority, and (c) to agree to indemnify any Federal reserve bank for any loss resulting from the failure of such sending bank to have such authority." Among the terms and conditions thus prescribed are these: "A Federal reserve bank will act only as agent of the bank from which it receives such checks." "A Federal reserve bank may present such checks for payment or send such checks for collection direct to the bank on which they are drawn," or forward them " to another agent." "A Federal reserve bank may * * * at its option, either directly or through an agent, accept * * * bank drafts * * * in lieu of cash," without being liable for any loss thereby resulting. " The amount of any check for which payment in actually and finally collected funds is not received shall be charged back to the forwarding bank, regardless of whether or not the check itself can be returned." Finally each Federal Reserve bank may promulgate its own regulations, not inconsistent with law or with the regulations of the Board, and such regulations shall be binding upon member and non-member banks availing of its privileges.

Pursuant to the authority thus conferred, the defendant made its own regulations (circular No. 728, July 1, 1926), reaffirming the regulations adopted by the Board and supplementing them by others. One of the supplemental rules prescribes the period that shall elapse before any credit shall be allowed, either provisional or final, for checks sent in by members. Credit may be given at once in what is known as a deferred account, not subject to be drawn on, but there is to be no credit in the reserve account until " the appropriate time indicated on the current time schedule has elapsed," though even upon entry in that account, " credit and availability are in all instances subject to * * * actual receipt of payment." The time schedule thus referred to is based upon the average

mailing time required for items to reach the paying bank, plus the time required for the paying bank to remit to the defendant. Another supplemental rule gives notice to member banks and others that defendant will handle checks as cash items only in accordance with uniform instruction therein set forth, and that "any contrary or special instructions noted on cash letters or attached to checks will be disregarded." Another rule prescribes the form of the indorsement to be adhered to by transmitting banks, whether members or non-members. The indorsement must be "without restriction to the order of the Federal Reserve Bank of New York or to the order of any bank, banker, or trust company with all prior indorsements guaranteed." This form is necessary, as has been stated, whether the checks transmitted to the defendant are from members or non-members, though the statute is explicit to the effect that there shall be no power in a reserve bank to handle checks for non-members except "solely for the purposes of exchange or of collection" (Federal Reserve Bank Act, § 13, amendment of 1917, § 4). Plainly, then, the form of the indorsement was not conceived of as involving a departure from the mandate of the statute. Plainly, too, it was not conceived of as inconsistent with the regulations and the circular whereby checks received from any bank are to be handled by the reserve banks in the capacity of agents only. The same circular and regulations that prescribe the form of the indorsement establish the practice and the agreement to receive the checks as agent, and give notice to transmitting banks that the terms thus established shall be exclusive of any others.

The inference of ownership that follows in most cases from an unqualified indorsement is one dependent upon intention. It may be overborne by agreement to the contrary, whether the evidence of agreement be direct or circumstantial (*Federal Reserve Bank* v. *Malloy, supra*, at p. 164). Direct as well as circumstantial is the evidence

before us. The regulations of the Board, reinforced by the defendant's circular, and assented to by the transmitting banks, are equivalent to an express agreement that as between the defendant and the other banks the relation engendered by the receipt of uncollected paper shall be an agency and nothing more. The agreement is confirmed by " the underlying purposes and policies of the Federal reserve system " (per CROUCH, J., in the court below), by the place of the reserve banks in the distribution of banking functions as conceived and developed by the framers of the statute. There is no token of a purpose to burden clearance and collection with the responsibilities of ownership.

The argument is made that a distinction is to be drawn between collection for the member banks and collection for the use of others. The regulations and the circular do not express such a distinction; if it is to be made, it must be interpolated by a process of construction. We are told that what is said in the rules as to the existence of an agency had its origin in an attempted adaptation of the structure of the system to the necessities of the new business made possible in 1917 through the amendment of the statute. Till then, collections by a reserve bank were always for the account of member banks, for whom it was also at liberty to receive checks or moneys for deposit. Since then, there may also be collections for the convenience of non-members. To these and to these only, we are told, the regulation and the circular were intended to apply. The history, statutory and administrative, of the Federal Reserve system teaches a different lesson. There is no connection, temporal or causal, between the genesis of the rule that the relation shall be one of agency and the enlargement of the field of business following the amendment of the statute. Long before there was power to make clearances or collections for banks not members of the system, there was already a statement in the rules that

in the handling of checks and drafts when forwarded by members, the reserve banks were to be deemed to act in the capacity of agents only. Amendments of the rules have restrained responsibility still farther by adding a provision that the agency shall be one for the forwarding bank, and not for any other, thereby excluding an attempt to convert it into an agency for the payees of the checks, the original depositors (*Federal Reserve Bank* v. *Malloy*, *supra; City of Douglas* v. *Federal Reserve Bank, supra*). From the beginning, however, the relation has been classified as agency, not ownership. A classification so explicit may not be held to have been neutralized by the terms of the " cash letters," with their varying declarations that the checks are inclosed for " credit," or for " collection and credit," or for " collection and remittance " (cf. *Bank of America* v. *Waydell*, 187 N. Y. 115, 120). By express provision of the defendant's circular the letters must be disregarded if inconsistent with the uniform practice established by the circular and by the regulations of the Board behind it. There and nowhere else, least of all in a perfunctory notice of remittance embodied in a printed form, the agreement governing the relation has its final and complete expression.

If the defendant was an agent in the receipt of the Zartman drafts and the substituted moneys, the question must still be met whether its liability was enlarged by any of its acts thereafter. We must say whether the agent became subject to the liability of an owner when instead of remitting the proceeds of collection directly to its principals, it put the proceeds to their credit in an ordinary deposit account, thereby turning the relation from one of agency into one of creditor and debtor. In effect, the situation was then the same as if the defendant, receiving the money in the capacity of agent, had handed it over to the principals, and had received it back at once to be retained as a deposit (*Commercial Bank of Penn.* v. *Armstrong*, 148 U. S. 50, 58, 59; *Marine Bank* v.

*Fulton Bank,* 2 Wall. [U. S.] 252; *Evansville Bank* v. *German American Bank,* 155 U. S. 556; *National B. & D. Bank* v. *Hubbell,* 117 N. Y. 384, 396; *Langley* v. *Warner,* 3 N. Y. 327, 329). We think the new relation did not take from the defendant the protection of the rule that money paid to an agent, and lawfully accepted, may not thereafter be reclaimed by one who has made the payment with notice of the agency, if before the attempted reclamation the agent in good faith has settled with the principal (*National Park Bank* v. *Seaboard Bank,* 114 N. Y. 28; *National City Bank* v. *Westcott,* 118 N. Y. 468, 473, 474; *Hooper* v. *Robinson,* 98 U. S. 528; *Buller* v. *Harrison,* 1 Cowper, 565). True, indeed, it is that the settlement sufficient to call this precept into play must be actual and not constructive (*Buller* v. *Harrison, supra; Mowatt* v. *McLelan,* 1 Wend. 173, 178; *La Farge* v. *Kneeland,* 7 Cow. 456, 460). If all that the agent has done is to agree with the principal that the fund, still intact, shall be held thereafter as a debtor, he is not subjected to any loss if directed to make restitution out of the moneys thus retained (cf. *La Farge* v. *Kneeland* and *Mowatt* v. *McLelan, supra*). On the other hand, when once the fund has been depleted by payment of the debt, the situation becomes the same as if the payment to the principal had been made at the beginning. The agent is no better, off by reason of the new relation, but even if no better, he is equally no worse.

As to this aspect of the case, the ruling in *National Park Bank* v. *Seaboard Bank* (*supra*) is a precedent so nearly identical that it must be accepted as decisive. There the Seaboard Bank received a check for collection as agent for the Eldred Bank and upon receipt of the proceeds gave notice to its principal in accordance with a course of dealing that the proceeds had been credited in an account current between them on which drafts from time to time were drawn as on an ordinary account between a bank and a depositor. There can be no ques-

tion that the collecting bank, after the giving of this notice, was at liberty to use the proceeds with all the freedom of an owner, discharged of any duty to remit *in specie* to the principal (cf. *Commercial Bank of Penn.* v. *Armstrong, supra; Marine Bank* v. *Fulton Bank, supra*). Even so, the ruling was that it could no longer be held to restitution at the suit of the drawee bank after the drafts on the account current had exhausted the credit balance existing at the time of the collection. To determine whether the balance had been used up, the court applied the rule in *Clayton's Case* (1 Meriv. 572, 604, 608) whereby " the successive payments and credits " are to be appropriated " in discharge of the items of debt antecedently due in the order of time in which they stand in the account," the first payments out extinguishing the first payments in. There are many other cases, State and Federal, enforcing a like rule (*Allen* v. *Culver*, 3 Denio, 284, 293; *Thompson* v. *St. Nicholas Nat. Bank*, 113 N. Y. 325, 333; *Delaware Dredging Co.* v. *Tucker Co.*, 25 Fed. Rep. [2d] 44, 46; *Cory Bros. & Co.* v. *Owners of S. S. Mecca*, [1897] A. C. 286, 288; *Deeley* v. *Lloyd's Bank, Ltd.*, [1912] A. C. 756, 783; *Matter of Stenning*, [1895] 2 Ch. 433). We have no thought to suggest that this or any other formula as to the application of payments to the items of an account is of such inflexible validity as to admit of no exceptions. Whatever rule is framed will be subordinated to the broader principle that an application, usually appropriate, may be varied by the court when variance is necessary to promote the ends of justice (*Korbly* v. *Springfield Inst. for Savings*, 245 U. S. 330; *Lichtenstein* v. *Grossman Constr. Corp.*, 248 N. Y. 390; *Matter of Hallett's Estate*, 13 Ch. Div. 696; *Cunningham* v. *Brown*, 265 U. S. 1, 12, 13). None the less, the formula is expressive of a rule that must prevail in the absence of persuasive reasons for qualification or exception. We cannot fairly say that justice will be thwarted if the rule is followed here. The principals are solvent banks, and the

trustees are at liberty to pursue the moneys in their hands (*Matter of Hill Co.*, 130 Fed. Rep. 315, 318). At least, if there is any obstacle, there is nothing in the record to tell us what it is. No obvious requirement of policy or justice exacts the suspension or abandonment of an established rule of law to the end that collection from an agent may take the place of an existing and sufficient remedy by suit against the principals.

Passing, then, from the question of the application of payments, we come back to the inquiry whether the immunity of the agent is lost or impaired when the proceeds of the collection, instead of being remitted to the principal at once, are retained as a deposit and remitted later on. What was held on that subject in the case of the Seaboard Bank has not been modified by anything decided since that time. *National B. & D. Bank* v. *Hubbell* (*supra*), with some analogies on the surface, is essentially dissimilar. The facts in the *Hubbell* case were these: Checks forwarded for collection had been placed when collected to the credit of a deposit account. Upon the failure of the bank, the depositor made claim to the proceeds in the hands of a receiver as if subject to a trust, though the entry in the deposit account had been made with its assent. The court held that the claim had been turned into a debt, and that the depositor must come in and share with the general creditors (cf. *Latzko* v. *Equitable Trust Co.*, 275 U. S. 254). The point to be determined was the liability of an agent to a principal, of a bank to its correspondent, after the termination of the agency. No question was involved as to its liability to a third person, the drawee of the checks, seeking restitution after the agent and the principal had made a settlement between themselves.

We conclude, as in the *Seaboard* case, that the defendant did not enlarge its liability to the representatives of the bankrupts when, after collection was complete, it transformed its relation to the forwarders from agency

to debt. Legal concepts will not be strained to relieve an agent of liability by force of a settlement that is merely formal or constructive, but by the same token they will not be strained against him to charge him with liability. In a formal or constructive sense, the defendant, acting as agent, settled with its principals when by the entries in its books in accordance with the course of dealing it gave up the moneys received by it as agent and took them back as debtor. Such a settlement will not halt the pursuit and relieve from liability while the fund is still intact. It will not open the door to enable the pursuit to be continued when the fund has been disbursed.

We have said that the money was lawfully collected by the agent and was paid by the drawee with notice of the agency. Lawful the collection was at the moment of the making, though the agent in collecting had cause to believe that the effect of the payment would be a preference among creditors. The statute does not say that one who accepts a payment from a debtor believed to be insolvent is guilty of a fraud (*Van Iderstine* v. *National Discount Co.*, 227 U. S. 575, 582; *Wilson* v. *Mitchell Woodbury Co.*, 214 Mass. 514, 519; *Grandison* v. *Robertson*, 231 Fed. Rep. 785, 788). A payment so made is not even voidable thereafter unless a petition in bankruptcy follows within four months. If that interval elapses with bankruptcy postponed, the preference, however dubious in its making, is proof against assault. We may not hold in such conditions that the defendant by the mere acceptance of the money was guilty of a wrong, and so chargeable with liability if it did not keep the fund intact (Mechem on Agency, vol. 1, §§ 1435, 1436). Before return became a duty, the money was paid out. If there was need of notice to the drawee that the drafts were collected by the defendant as agent and not as owner (Mechem, *supra*, § 1439; *Holt* v. *Ross*, 54 N. Y. 472; *National City Bank* v. *Westcott*, 118 N. Y. 468, 473; *Canal Bank* v. *Bank of Albany*, 1 Hill, 287; cf., however, Williston, on Contracts,

vol. 3, § 1595, note), we think the notice was imparted by the regulations and the circulars, public and official documents, which, like the limitations of a corporate charter, were to be heeded by the world at large. But notice was unnecessary, if the defendant was not a creditor, for the right to avoid the preference is the creature of the statute, and the fact, not the supposition or fancy of the debtor, must tell us when the right exists.

We pass then to the final question, whether within the meaning of the act of Congress a bank collecting a draft as agent, and not as owner (*Matter of Hill Co.*, *supra*), is a creditor subject to a duty to make restitution of a preference, though there has been remittance to its principal prior to the bankruptcy. There can be no answer without recalling the provisions of the statute.

Bankruptcy Act, section 60-b (Mason's U. S. Code, title 11, ch. 6, § 96) provides: " If a bankrupt shall * * * have made a transfer of any of his property, and if, at the time of the transfer * * * and * * * within four months before the filing of the petition in bankruptcy * * *, the bankrupt be insolvent, and * * * the transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such * * * transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

One who accepts a preference not for his own account but as agent for a principal is not " the person receiving it or to be benefited thereby." To be sure, the principal is chargeable with notice imparted to the agent as to the financial condition of the debtor and the tendency of the payment to effect a preference. To be sure, also, the agent may be sued directly if the title is in his name and the subject of the transfer intact in his possession, just as suit might be brought in like conditions against

any other trustee holding money or other property the fruits of an unlawful sale. The one who receives a preference, however, within the meaning of the statute, is the one who is preferred, and the one who is preferred is not the mere custodian or intermediary, but the creditor, present or contingent, who receives by virtue of the preference an excessive share of the estate. The statute does not intend, of course, that the form of the transaction shall be permitted to obscure realities. " To constitute a preference, it is not necessary that the transfer be made directly to the creditor. It may be made to another for his benefit " (*National Bank of Newport* v. *National Herkimer County Bank*, 225 U. S. 178, 184). This will happen, for example, if bankrupts make a transfer of their assets to a creditor of their own creditor, who is thus preferred to the same extent as if the transfer had been made to him directly (225 U. S. at p. 184). There has been no attempt in the decisions to catalogue forms of benefit and methods of evasion. No doubt the case supposed is typical of others. One thread of uniformity may be looked for, none the less, among all diversities of circumstance. The person to be charged with liability, if he has parted before the bankruptcy with title and possession, must have been more than a mere custodian, an intermediary or conduit between the bankrupt and the creditor. Directly or indirectly he must have had a beneficial interest in the preference to be avoided, the thing to be reclaimed. One will find an apposite illustration of the effect and meaning of the statute in the holding in *Keystone Warehouse Co.* v. *Bissell* (203 Fed. Rep. 652). The buyer of flour, intending to prefer the seller, made payments to a warehouseman who had notice of insolvency. The holding was that the warehouseman, who had remitted the payments to the seller, was not chargeable thereafter at the suit of the trustees. A possessory right or special property having its origin in the bailment may have given him capacity

to maintain a suit for flour wrongfully withdrawn, but did not turn him into a creditor receiving directly or indirectly the benefit of a preference. *Mercantile Trust Co.* v. *Schlafly* (299 Fed. Rep. 202), much relied on by the plaintiffs, is not a holding to the contrary, for there the defendant to be charged, a trustee under a mortgage, had the moneys in its possession, the suit being brought before distribution among the bondholders (299 Fed. Rep. at p. 203). True, indeed, it is that the phraseology of the statute is inexact and ambiguous. Even so, a court will be cautious in imputing to the lawmakers a purpose to uproot the settled principles of the common law as to the effect of payment to an agent when followed by a settlement. All this is the more plainly true in view of the antithesis clearly marked upon the face of the enactment between the recipients of benefit, direct or indirect, who are the persons to be sued, and their agents in the business of the transfer, whose liability, if it exists, is secondary and incidental to the liability of others.

We find nothing inconsistent with these views in *Marine Trust Co.* v. *Lauria* (213 App. Div. 64; affd., 244 N. Y. 577) and *Matter of Veler* (249 Fed. Rep. 633). A bank to which a check is transferred by a restrictive indorsement for collection only may maintain an action on the check in its own name because section 67 of the Negotiable Instruments Law (Cons. Laws, ch. 38) says that it may (*Marine Trust Co.* v. *Lauria, supra;* cf. *Hays* v. *Hathorn,* 74 N. Y. 486; *Spencer* v. *Standard C. & M. Corp.,* 237 N. Y. 479). This does not mean that it is owner for every purpose; indeed by the very hypothesis it is not owner, but collector. Whether it is privileged in like circumstances to maintain a petition in bankruptcy must be held to be still uncertain. The opinion in *Matter of Veler (supra)* deals with a case where there was more than a mere agency. The assignee had a title absolute on its face, though the motive of the assignment was to facilitate collection for the benefit of another. Motive

without more may be insufficient to derogate from title (*Sheridan* v. *Mayor*, 68 N. Y. 30; *Hays* v. *Hathorn, supra*). But the right to sue, if it exists, does not mean of necessity that the suitor is reciprocally subject to a liability to be sued (*Keystone Warehouse Co.* v. *Bissell, supra*). We think the statute must be read in conformity with common-law analogies to exempt an agent or custodian from the duty to account for property or money, the subject of a preference, if before the coming of bankruptcy he has settled with his principal.

The judgment should be affirmed with costs.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.