Joseph K. BRINIG, Jr., Trustee of the Estate of Esskay Sales Company, a Corporation, Bankrupt, Appellant.

v.

AMERICAN CREDIT BUREAU, INC., Appellee.

No. 23284.

United States Court of Appeals, Ninth Circuit.

Feb. 22, 1971.

William P. Gray, District Judge, filed opinion concurring in part and dissenting in part.

Beverly McConnell (argued), of Wilson & McConnell, Phoenix, Ariz., for appellant.

Jerold Kaplan (argued), of Kaplan, Wilks & Abrams, Phoenix, Ariz., for appellee.

Before ELY and HUFSTEDLER, Circuit Judges, and GRAY,* District Judge.

HUFSTEDLER, Circuit Judge.

Appellant, trustee in bankruptcy for the Esskay Sales Company ("Esskay"), appeals from a summary judgment rendered in favor of American Credit Bureau, Inc. ("Credit Bureau"), an Arizona collection agency, in an action by the trustee against Credit Bureau and certain of Credit Bureau's assignors, to recover as voidable preferences payments totaling $17,491.08 that Credit Bureau received from Esskay. Of this sum, Credit Bureau collected $13,000 from Esskay during the four months anteceding March 11, 1964, the date upon which the involuntary bankruptcy petition was filed against Esskay. During the same period, Credit Bureau remitted to its assignors 80 percent of the money collected, and it retained 20 percent as its commissions. The remaining receipts were collected by Credit Bureau after the bankruptcy petition was filed.

The questions presented are these: (1) In respect of those payments received by Credit Bureau and remitted to its assignors during the four months preceding bankruptcy, is Credit Bureau liable to the trustee as the recipient of a voidable preference within the meaning of sections 60, sub. a(1), 60 sub. b of the Bankruptcy Act (11 U.S.C. §§ 96(a)(1), 96(b))? [1]

(2) As to those sums retained as commissions during the four months anteceding bankruptcy, is Credit Bureau the recipient of a preference voidable by the trustee?

We do not reach the question, posed in the trustee's brief, concerning the liability of Credit Bureau to repay to the trustee funds received by it from Esskay after the petition was filed, because that issue was not raised in the pleadings or the pretrial order. Mention of such receipts in some of the moving papers addressed to the motion for summary judgment did not expand the issues before the district court, and the district court did not purport to decide the question. For the same reason we do not reach the question whether or not the Credit Bureau was estopped from asserting that it was merely an agent, not the owner, of the accounts assigned to it for collection.

Esskay, a corporation, was a furniture retailer in Phoenix, Arizona. When Esskay failed to pay its accounts with seven furniture manufacturers and suppliers, they assigned their accounts to Credit Bureau for collection, by direct assignment, or, in some instances, by an assignment to a forwarding collection agency, CST Co., that, in turn, assigned the accounts to Credit Bureau. By November 1963, Credit Bureau had collected $4000 from Esskay on the accounts. Further efforts to collect were unavailing until, on December 20, 1963, Credit

---

* Honorable William P. Gray, United States District Judge for the Central District of California, sitting by designation.

1. Section 60, sub. a (1) of the Act provides:

"a(1) A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

Section 60, sub. b in pertinent part provides:

"Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property, except a bona-fide purchaser from or lienor of the debtor's transferee for a present fair equivalent value. * * *"

Bureau sued Esskay and its guarantors on the accounts and attached Esskay's inventory. The attachment triggered settlement negotiations that culminated in an agreement by which Credit Bureau released the attachment. The inventory was sold at a series of auctions held from February 3, 1964, to March 30, 1964, from which Credit Bureau received the first $12,882.54 realized from the sales. The total receipts from the voluntary payments plus the proceeds of the sales collected by Credit Bureau during the four-month period anteceding bankruptcy were $13,000, of which Credit Bureau retained 20 percent as its commissions and forwarded the remainder to the assignor-creditors before the petition was filed.

The trustee initiated the present action against Credit Bureau alone. Two years later he filed an amended complaint joining as additional defendants five of the furniture manufacturers and suppliers, previously mentioned, plus another creditor who received funds collected by Credit Bureau after the bankruptcy petition was filed. One of the defendants was voluntarily dismissed. A second defendant was dismissed after that party successfully set up the bar of limitations. The action was not pursued against the remaining defendants, other than Credit Bureau.

We dispose first of the contention that the trustee can recover from Credit Bureau that part of the payments as preferences made to Credit Bureau and retained by it as commissions, even if the trustee could not recover the remainder of the payments forwarded to the assignors before the petition was filed. If we assume, *arguendo*, that the commissions are properly separable from the totality of payments received by Credit Bureau, we must conclude that the trustee cannot recoup the commissions as preferences because as to those commissions, Credit Bureau was not Esskay's

"creditor" within the meaning of subsection (11) of section 1 of the Act (11 U.S.C. § 1(11)).[2] "Creditor," as there defined, includes "anyone who owns a debt, demand, or claim provable in bankruptcy, and may include his duly authorized agent, attorney, or proxy." That subsection imposes at least two distinct limitations upon the meaning of the term "creditor": (1) the person must have the kind of claim that can be proved in bankruptcy, and (2) the debt, demand, or claim must involve a liability of the bankrupt. (1 W. Collier, Bankruptcy ¶ 1.11, at 76–80 (14th ed. 1970).) Although Credit Bureau's claim for commissions is not excluded by the first limitation, it is excluded by the second. No relationship existed between Esskay and Credit Bureau that could form the predicate for liability upon Esskay to pay Credit Bureau's commissions. Liability for the payment of commissions rested entirely upon Credit Bureau's assignors, whose agreements with Credit Bureau created and measured their obligations. Therefore, the trustee cannot recover the commissions from Credit Bureau unless he could recover the payments transmitted from Credit Bureau to the assignors and the commissions are deemed an inseparable part of those payments. Because we conclude that the trustee cannot recoup from Credit Bureau the payments it transmitted to the assignors before bankruptcy, we do not decide the question of separability.

Our inquiry must begin with the terms of the Act. Credit Bureau is not excluded by the definition of "creditor" in subsection (11) of section 1 of the Act (11 U.S.C. § 1(11)), *supra*, in respect of transmitted funds, because if it owned the accounts from which the payments flowed, those accounts are the kind of debts provable in bankruptcy, and they were debts for which Esskay was liable. If Credit Bureau were simply an agent for the owners of the ac-

---

2. We do not consider the question whether or not commissions could be recovered by the trustee upon some theory other than preference (*e. g., see* Duell v. Brewer (2d Cir. 1937) 92 F.2d 59), because the trustee made no attempt below to pursue any alternative theories.

counts, it nevertheless falls within that portion of subsection (11) stating that "creditor * * * may include his duly authorized agent, attorney, or proxy."

We next turn to section 60, sub. b (11 U.S.C. § 96(b)). That section states the circumstances in which the trustee can avoid a preference, the form of the recovery, and the persons against whom the recovery may be sought. Thus a preference may be avoided "if the creditor receiving it or to be benefited thereby or his agent * * * has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent." The trustee "may recover the property or, if it has been converted, its value * * *" The recovery can be made "from any person who has received or converted such property" except a bona fide purchaser for value.

The language "if the creditor receiving it or to be benefited thereby or his agent" has been construed in only one reported case in the context of a trustee's effort to recoup funds received by an agent and paid over to a principal before bankruptcy. In Carson v. Federal Reserve Bank (1930) 254 N.Y. 218, 172 N.E. 475, the trustee of a private bank sued the Federal Reserve Bank to recover as preferences monies collected by the latter and credited to the accounts of member banks which had cashed checks drawn on the bankrupt bank during the four-month period anteceding bankruptcy. The Federal Reserve Bank had reason to know that the bankrupt was insolvent when it entered the challenged credits to the accounts of member banks. In pertinent part, section 60, sub. b of the Act as it then read provided: "If a bankrupt shall * * * have made a transfer * * * and * * * the transfer then operate as a preference, and *the person receiving it or to be benefited thereby, or his agent* acting therein, shall then have reasonable cause to believe that the enforcement of such * * * transfer would effect a preference, it shall be voidable by the trustee. * * *" (Emphasis added.)

We adopt the interpretation of the emphasized language stated by Judge Cardozo as follows:

"One who accepts a preference not for his own account but as agent for a principal is not 'the person receiving it or to be benefited thereby.' To be sure, the principal is chargeable with notice imparted to the agent as to the financial condition of the debtor and the tendency of the payment to effect a preference. To be sure, also, the agent may be sued directly if the title is in his name and the subject of the transfer intact in his possession, just as suit might be brought in like conditions against any other trustee holding money or other property the fruits of an unlawful sale. The one who receives a preference, however, within the meaning of the statute, is the one who is preferred, and the one who is preferred is not the mere custodian or intermediary, but the creditor, present or contingent, who receives by virtue of the preference an excessive share of the estate. * * * The person to be charged with liability, if he has parted before the bankruptcy with title and possession, must have been more than a mere custodian, an intermediary or conduit between the bankrupt and the creditor. Directly or indirectly he must have had a beneficial interest in the preference to be avoided, the thing to be reclaimed." 254 N.Y. at 235–236, 172 N.E. at 482.

There remains the characterization of Credit Bureau's relationship to the assignor-creditors and its relationship to Esskay to decide whether Credit Bureau was essentially a conduit, as the district court decided, or was an owner-creditor, as the trustee contends.

Credit Bureau received written assignments for collection from all five creditors during the period August 19, 1963, to December 20, 1963. The assignments authorized Credit Bureau to sue either in its own name or in the name of the assignor, to waive interest and collection charges, to do all things

necessary to enforce collection or effect a compromise settlement, and to pay over to the assignors collections upon stated terms. Credit Bureau did not guarantee collection and assumed no responsibility for uncollected accounts, but no charge was to be made for accounts except upon collection actually made. The assignors could withdraw a claim or listing from the assignment, but as to such claims, the Credit Bureau was entitled to the same commissions as if fully collected. Credit Bureau sued Esskay in its own name, ran the attachment, and settled the case using the services of a lawyer retained and paid by Credit Bureau.

Credit Bureau was a collection agency licensed by Arizona and subject to Arizona's statutes regulating its licensees. Under Arizona law, Credit Bureau was obligated to account to and pay over to its clients the proceeds it collected, less collection charges as agreed to by the licensee and its client, within 30 days from the last day of the month in which the account is collected. (Ariz.Rev. Stats. (Supp.1970) § 32–1055, subsec. A.)

Credit Bureau was neither the unfettered owner of the accounts, as the trustee urges, nor was it the complaisant agent, as Credit Bureau suggests. It was given enough of the incidents of ownership to make collections effective, but not enough to deal with the accounts as if it wholly owned them. In the total context of the commercial transactions involved, Credit Bureau was an intermediary between Esskay and the creditor-assignors with respect to the funds it collected and promptly paid over to the assignors before bankruptcy. It was not the beneficial owner of those funds, and it did not benefit from their receipt.

The judgment is affirmed.

WILLIAM P. GRAY, District Judge (concurring and dissenting):

I agree with my colleagues that the trustee may not recoup from Credit Bureau the funds that it paid over to its assignors before bankruptcy. However, I would allow recovery by the trustee of the money that Credit Bureau retained as its commissions. The full beneficial interest in the portion of the claim against Esskay to which such money is allocable was assigned to Credit Bureau. As to that portion of the claim, Credit Bureau "stood in the shoes" of its assignors. It therefore owned a debt and became a "creditor," within the meaning of the Bankruptcy Act, in the same manner as would any other person who had received an assignment of a claim.

Credit Bureau unquestionably gave full and valid consideration in return for the portion of the claims that it held; but so, presumably, did all of the general creditors, for whose benefit the preference laws were established. I can see no good reason why Credit Bureau should stand in a better position than the other general creditors.