
**In re COLOMBIAN COFFEE CO.,
INC., Debtor.**

**Lawrence R. METSCH,
Plaintiff/Appellant,**

**v.**

**FIRST ALABAMA BANK OF MOBILE,
Defendant/Appellee.**

**No. 86–1214–Civ.**

United States District Court,
S.D. Florida,
Miami Division.

June 24, 1987.

Lydia A. Fernadez, Miami, Fla., for plaintiff/appellant.

Richard T. Dorman, Mobile, Ala., for defendant/appellee.

## MEMORANDUM DECISION

SCOTT, District Judge.

The Trustee of Colombian Coffee Co., Inc. ("Trustee"), Lawrence R. Metsch, brought an adversary proceeding in the United States Bankruptcy Court for the Southern District of Florida to recover $3,787,000 from the First Alabama Bank of Mobile ("Bank"). As grounds for recovery, the Trustee alleged that the funds constituted a fraudulent transfer under 11 U.S.C. § 548(a). He further alleged that the Bank, as the "initial transferee" or as an "immediate or mediate transferee," was liable under § 550(a).

The operative facts, succinctly stated by Chief Judge Thomas C. Britton, are as follows:

> During the four weeks between February 3 and March 2, 1983, the amount in question moved in three separate transfers from Colombian Coffee's bank accounts in New York and Miami to the defendant bank for deposit in the account of General Coffee Corporation. The funds were disbursed almost immediately by General Coffee. Colombian, General and the individual who owned and controlled both corporations and caused the transfer of the funds from one to the other, all filed for bankruptcy within three months thereafter.

*In re Colombian Coffee Co., Inc.,* 59 B.R. 643, 644 (Bkrtcy.S.D.Fla.1986).

Following a trial, Judge Britton entered judgment for the Bank and dismissed the Trustee's complaint with prejudice. 64 B.R. 585. Although finding that the Trustee had proved the elements of constructive fraud under § 548(a)(2), Judge Britton held that the Trustee could not recover from the Bank because the Bank was "neither the 'initial transferee' nor 'any immediate or mediate transferee' for the purposes of § 550(a)." *Id.* at 645. He reasoned that nothing in the legislative history indicated that "§ 550(a) was intended to make an innocent link in the commercial chain bear

the loss of a fraudulent or preferential transfer that has vanished beyond the trustee's reach." *Id.* From the adverse decision, the Trustee appeals.

## I.

Code section 550(a) provides that:

to the extent that a transfer is avoided ... the trustee may recover ... the property transferred, or, if the court so orders, the value of such property, from (1) the *initial transferee* of such transfer or the entity for whose benefit such transfer was made; or (2) any *immediate or mediate transferee* of such initial transferee." (Emphasis added).

The Trustee urges a literal reading of this statutory language. He contends that the statute's legislative history dictates such a reading. He also contends that the specific statutory exceptions provided in § 548(d)(2)(B) and (C) confirm the intent of Congress to insulate from liability only brokers or repo participants who receive margin payments and to permit no other exceptions.

The sparse case law on point does not support the Trustee's position. The court in *In re Fabric Buys of Jericho, Inc.*, 33 B.R. 334 (Bankr.S.D.N.Y.1983) faced a situation analogous to the present case. The trustee instituted adversary proceedings against a law firm asserting that the law firm was liable as the "initial transferee" of a preferential payment. The payment had been made by the debtor to settle a dispute with a client of the firm. After the payment was made in escrow to the client's attorneys, the funds were disbursed to the client. The court rejected the trustee's argument that the law firm was liable as the "initial transferee" of a preferential payment. Reasoning that § 550(a) was passed to remedy recovery problems which existed under the former Bankruptcy Act of 1898,

the court determined that Congress intended to "preclude multiple transfers or convoluted business transactions from frustrating the recovery of avoidable transfers." *Id.* at 336. Because the law firm had acted merely as a conduit of funds from the debtor to the client, the court concluded that the law firm was not an "initial transferee" within the meaning of § 550(a).

*In re Black & Geddes, Inc.*, 59 B.R. 873 (Bankr.S.D.N.Y.1986) similarly dealt with the applicability of § 550(a) to an entity that is a mere conduit of funds. There a steamship agency, acting on behalf of a common carrier by sea, collected payment from the debtor for freight due on a bill of lading for carriage. Upon receipt of the funds from the debtor, the agency paid the freight over to the common carrier, less the amount of its commission. Following *Fabric Buys*, the court held that an entity that acts as a mere conduit of funds is not an "initial transferee" within the scope of section 550 and denied recovery against the agent. By so holding, the court noted that it found

continued vitality in Judge Cardozo's discussion in *Carson v. Federal Reserve Bank*, 254 N.Y. 218, 235–36, 172 N.E. 475 (1930) ("The person to be charged with liability, if he has parted before the bankruptcy with title and possession, must have been more than a mere custodian, an intermediary or conduit between the bankrupt and the creditor. Directly or indirectly, he must have had a beneficial interest in the preference to be avoided, the thing to be reclaimed.").

*Id.* at n. 4, 875.

■ This court finds the reasoning in *Fabric Buys* and *Black & Geddes* persuasive and agrees with Judge Britton's application of the "commercial conduit" analysis to the facts of this case.[1] Those

---

1. This court disagrees with the Trustee's assertion that while the "commercial conduit" analysis is arguably appropriate when a trustee invokes 11 U.S.C. § 547 to avoid a preferential transfer, it is illegitimate in the context of an avoidance effort under 11 U.S.C. § 548. Section 550 separates the concepts of avoidable transfers and recoverability from the transferees.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 375 (1977); S.Rep. 989, 95th Cong.2d Sess. 90 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The specific principle under which a transfer is avoided is "irrelevant to the liability of the transferee against whom the trustee claims recovery of the property." 4 *Collier on*

facts illuminate the weakness of the Trustee's argument.

It is undisputed that the Bank acquired no beneficial interest from the wire transfers and exhibited no bad faith. *Colombian Coffee, supra* at 644. In addition, the Bank possessed no discretion with respect to the disposition of the funds—it was constrained to follow the debtor's instructions. *Id.* Nothing in the legislative history of § 550 indicates that Congress intended to impose liability under these circumstances. Indeed, it would be both problematical and preposterous were courts to adopt the Trustee's position.

> As so aptly stated by Judge Britton:
>
> Wire transfers are voluminous. The defendant bank receives over 100 a day. Larger banks receive thousands. They involve billions of dollars. They constitute an integral part of today's worldwide banking system.
>
> The wire transfer notice frequently does not identify the originating party.... They are frequently automated and never seen by a human eye. If a bank must at its peril examine the source of the wired funds, determine its solvency and verify the consideration it received before the bank honors the transfer, the wire transfer system would utterly collapse. *Id.* at 645.

The logic of the above is obvious and makes it unnecessary for this Court to further expound on its ruling. In sum, this Court is not persuaded by the Trustee's arguments and refuses to literally apply § 550(a) to the circumstances of this case.

*Bankruptcy* ¶ 550.01, at 550–2 to 550–3 (a5th ed. 1985).

This court also rejects the Trustee's contention that the specific statutory exceptions provided in § 548(d)(2)(B) and (C) indicate a legislative intent to permit no other exception. As correctly stated by Judge Britton, "[t]hese provisions have no application to § 550(a), which is the only predicate for this defendant's liability. *Colombian Coffee, supra* at 646.

**2.** Relevant to this Court's decision is the recognized principle of statutory construction where if a literal construction of the words of a statute would lead to an absurd, unjust or unintended result, the statute must be construed so as to avoid that result.

To apply this section literally in the present case would clearly work an absurd and inequitable result.[2]

## II.

Relying on Bankruptcy Judge Galgay's opinion in *In re Fabric Buys of Jericho, Inc.*, 33 B.R. 334 (Bankr.S.D.N.Y.1983), Judge Britton held alternatively that even if the Bank had been a transferee for the purposes of § 550(a), the court should exercise its equitable discretion to prevent the Trustee from recovering a windfall from an innocent party. The final issue before the Court is whether the bankruptcy court possessed the equitable discretion to prevent the Trustee from recovering the transfer from the Bank.

The equitable powers of the bankruptcy court have been expressly recognized by the United States Supreme Court. In *Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966), the trustee sought an order holding the bank liable for its payment of checks drawn by the debtor before its bankruptcy but presented for payment after the filing of the bankruptcy petition. The trustee argued that the bank's payment of the checks after the filing of the petition was a "transfer" within the meaning of the former bankruptcy statute, § 70d(5), which allowed the trustee to avoid post-petition transfers. The Supreme Court held that although a literal reading of the statute might suggest otherwise, it would be inequitable to hold the bank liable to the trustee. The Court stated:

*United States v. Mendoza,* 565 F.2d 1285, 1288 (5th Cir.1978); *see Perry v. Commerce Loan Co.,* 383 U.S. 392, 86 S.Ct. 852, 15 L.Ed.2d 827 (1966); *Rector of Holy Trinity Church v. United States,* 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892); *Worthy v. United States,* 328 F.2d 386 (5th Cir.1964); *Bulk Distribution Centers, Inc. v. Monsanto Co.,* 589 F.Supp. 1437 (S.D.Fla.1984). *See also, Muniz v. Hoffman,* 422 U.S. 454, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975) ("a literal construction of a statute need not be accepted where the thing may be within the letter of the statute, but not be found to be within the statute because it is not within the spirit of the statute, or within the legislative intent").

[W]e do not read the statutory words with the ease of a computer. There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction.

385 U.S. at 103, 87 S.Ct. at 277, 17 L.Ed.2d at 201.

Several circuit courts have recently followed the principle enunciated by the Supreme Court:

Essential to any analysis of the meaning of and policy behind any section of the Bankruptcy Code is the recognition that a bankruptcy court is a court of equity. Bankruptcy courts do not read statutory words with a computer's ease, but operate under the overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction.

*In re Briggs Transportation Co.,* 780 F.2d 1339, 1343 (8th Cir.1986). *See also, In re Ranch House of Orange-Brevard, Inc.,* 773 F.2d 1166, 1169 (11th Cir.1985); *In re Mobile Steel Company,* 563 F.2d 692, 698–99 (5th Cir.1977).

■ As these cases make clear, the bankruptcy courts are courts of equity. Judge Britton was thus empowered to employ equitable principles in interpreting and applying § 550(a) to the facts of this case.[3]

This Court will not reiterate why it would be inequitable to hold the Bank liable to the Trustee in the instant case, for enough has been said in the preceding section. In this Court's opinion, Judge Britton's exercise of equitable discretion was appropriate as a matter of law to alleviate an indisputable inequity to the Bank.

## CONCLUSION

This Court is convinced that § 550 has no application to the facts of this case. The

Bank is not a "transferee" of property of the debtor within the meaning of section 550. Alternatively, the Bankruptcy Court properly exercised its equitable discretion in holding that the Bank is not liable for the transfer of funds under section 550. It is therefore,

ORDERED and ADJUDGED that the Bankruptcy Court's holding is AFFIRMED.[4]

---

**3.** The Trustee contends that in spite of this case law, 28 U.S.C. § 1481 has been repealed and thus deprives the bankruptcy courts of equitable powers. The courts, however, are divided on the issue of whether 28 U.S.C. § 1481 is still in effect. *See Better Homes of Virginia v. Budget Service Co.,* 52 B.R. 426, 430 (E.D.Va.1985); *In re Industrial Tool Distributors, Inc.,* 55 B.R. 746, 749 n. 6 (N.D.Ga.1985). Despite the disagreement among the courts as to the status of § 1481, this Court finds it unnecessary to reach an opinion regarding its status due to the clear

authority supporting the existence of a bankruptcy court's equitable discretion. Moreover, bankruptcy courts are empowered to "issue any order, process, or judgment that is necessary or appropriate" to carry out the provisions of the Bankruptcy Code. 11 U.S.C.A. § 105(a) (West Supp.1987).

**4.** In light of this Court's disposition of the merits of the case, Appellee's Motion for Leave to File Posthearing Brief is DENIED as moot.