### Friend W. Miller, Respondent, *v.* Eliza Knox et al., Appellants.

It is the duty of executors and administrators to receive the rents and pro-
fits of premises leased to their testator or intestate, accruing after his
death, and to the extent of the rent reserved in the lease, to apply them in
payment thereof, instead of placing them among the general assets; and
they are personally liable for the rent, to the extent of the rents and pro-
fits received by them. *Prima facie*, these are sufficient to pay the whole
rent; if not, it is matter of defence.

A landlord may collect the rents, accruing after the death of his tenant, of
the estate of the deceased, or of the executors or administrators person-
ally, to the extent of the rents and profits of the premises received by
them, and the balance, if any, of the estate.

(Argued September 20, 1871; decided January term, 1872.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial district, affirming a judgment in favor of plaintiff entered upon the decision of the court.

This action was brought to recover of the defendants a balance claimed to be due from them to the plaintiff for the rent of certain premises known as 326 Greenwich street in the city of New York. On the trial before a referee, it appeared that on the first day of February, 1857, one Nicho-

las Quackinboss leased to Charles Knox the said premises for the space of four years and three months, at the rate of $1,000 and Croton tax per year, with the privilege of remaining on the premises five years after the expiration of the four years, at the rent of $1,500 per year and Croton tax. On the 10th of February, 1858, Charles Knox, by and with the consent of Quackinboss, assigned the lease to Edward Knox. On the first day of November, in the same year, Quackinboss conveyed the demised premises to the plaintiff. On the 11th of May, 1863, Edward Knox died; on the nineteenth of the same month (May, 1863) letters of administration upon his estate were granted to the defendants, who, on the 16th day of March, 1865, rendered to the surrogate who granted the letters a final account of their administration, in which they charged themselves with $854.19 for various sums collected from the leasehold premises from the date of their appointment to June 1st, 1864. The plaintiff, upon being duly cited to appear before the surrogate on the day fixed for the final settlement of accounts, appeared and by his attorney filed the following objections:

1st. That the amount of rent collected should have been paid to the plaintiff instead of being included in the assets to be distributed.

2d. That the amount of rent due from May 1st, 1863, to Nobember 1st, 1864, $2,250, has not been inserted as a debt entitled to be paid from the assets of the estate; and

3d. That the rent from May 1st, 1863, to November 1st, 1864, with interest, should be paid by the said administrators before any debts due by the deceased at the time of his death.

On the sixth of the following April (1865), the accounts were, by an order of the surrogate, referred to an auditor for settlement, with directions to the auditor that, before he should proceed with the objections made by the plaintiff, the latter should present his claim duly verified to the defendants. The plaintiff did not present his claim, verified or otherwise, to the defendants. He was, notwithstanding, cited to appear

before the auditor, and did appear but withdrew. There is no evidence that he ever withdrew the objections. Before the final hearing before the auditor this action was commenced. The auditor, on the 20th of June, 1865, made his report, in which he made no mention of the plaintiff or his claim, except to say that he had failed to present his claim as required by the order of the surrogate, after two adjournments had been allowed to enable him so to do, and that he had withdrawn from the proceeding. Upon the report of the auditor, the surrogate in July following made his decree distributing the assets, in which he included as assets the proceeds of what the defendants had received from the leasehold premises since the death of Edward Knox; the whole assets amounting to about twenty-one per cent of the debts due from Knox at the time of his death. No award was made in the decree in favor of or against the plaintiff, or mention made of him except to say that on the return day of the original citation the plaintiff a creditor appeared before him by counsel.

The referee found as a fact in the case "that a final decree was made by the surrogate that the plaintiff should be paid ratably with the other creditors, without preference;" that the plaintiff did not appear after filing his objections in writing before the surrogate, "and that the defendants, immediately, after their appointment as administrators, entered into possession of said premises, and continued therein and collected the rents therefrom until the first day of June, 1864." And, as a conclusion of law, he found "that the proceedings before the surrogate were no bar to the plaintiff's right to recover in this action; that the defendants were personally liable for the rent of the premises;" to each of which findings the defendants excepted. The referee further found that the rent and interest amounted to $1,735.67. To this finding there was no exception. For which amount, with five per cent additional allowance, he ordered judgment.

*Samuel Hand* for appellants. There is no evidence charg-

ing defendants for rent, and an exception thereto presents a question of law. (*Wegman* v. *Childs*, 41 N. Y., 159; *Mason* v. *Lord*, 40 N. Y., 476.) They are only liable *de bonis testatoris*. (*Pugsley* v. *Aiken*, 1 Kern., 494.) If personally liable, it is only to the extent of the amount received by them. (COLERIDGE, *arguendo*, *Tremeere* v. *Morrison*, 1 Bing. N. C., 89; *Helier* v. *Casbert*, 1 Sid., 266; *Remnant* v. *Bremridge*, 8 Taunt., 191; *Wilson* v. *Wigg*, 10 East., 315; *Fisher* v. *Fisher*, 1 Bradf., 335.) The decree of the surrogate is conclusive against plaintiff. (*Rose* v. *Lewis*, 3 Lansing, 321; *White* v. *Coatsworth*, 2 Seld., 137; *Demarest* v. *Davy*, 29 How., 226, 275.

*W. McDermot* for respondent. Defendants are liable personally as assignees of the term. (*Matter of Galloway*, 21 Wend., 32; *Denniston* v. *Hubbell*, 10 Bos., 162; *Jones* v. *Hansmen*, 10 Bos., 176; *Martin* v. *Black*, 9 Paige, 644; Williams' Executors, Philadelphia ed., 1832, pp. 1076-7.) The surrogate had no jurisdiction to pass upon disputed claims. (*Wilson* v. *Baptist Education Society*, 10 Barb., 308; *Disosway* v. *Bank of Washington*, 24 Barb., 60; *Andrews* v. *Wallege*, 17 How. Pr. R., 263; *Curtis* v. *Stilwell*, 32 Barb., 354; *Tucker* v. *Tucker*, 4 Keyes, 136.)

GRAY, C. The finding that in the final decree of the surrogate the plaintiff was to be paid ratably with the other creditors is not only without proof to sustain it, but the evidence furnished by the decree itself is to the contrary. The error being rather in favor of the defendants than otherwise, is not a ground of exception by them; nor does the finding that the plaintiff did not appear in the proceedings before the surrogate after filing his objection, though not literally accurate, prejudice the defendants, unless he appeared, waiving his objection against the right of the defendants to include as assets, to be distributed among the creditors, the rent which had accrued out of the leasehold premises since the death of Edward Knox. He did not pre-

sent his claim to the defendants as one against the estate, verified in any way in compliance with the order of the surrogate, or do any other act from which it could be inferred that he intended to waive his protest against the right of the defendants or of the surrogate to appropriate the income of his property to those to whom it never belonged, and who not as against the plaintiff had the slightest equitable claim to it. On the contrary, as is quite clear from the facts that the estate was insolvent, the income from it much less than the rent reserved, and that he withdrew from before the auditor, before his report was made, and commenced this action, he never intended to submit the claim sued upon to the judgment of that officer.

The finding that the defendants, immediately after their appointment as administrators, entered into the possession of the demised premises, and continued therein and collected the rents therefrom until the first day of June, 1864, is fully sustained by their account rendered to the surrogate; and although that account does not contain an admission, in terms, that they entered into possession of the premises, the admitted fact that they collected the rents for that period amounts to the same thing. (*In re Galloway*, 21 Wend., 32, 33.) The conclusion of law, that the proceedings before the surrogate were no bar to this action, was, upon principle, right, and is fully sustained by authority. The estate of Edward Knox was worth but about twenty per cent of his indebtedness; the value of the leasehold estate did not, since his death, exceed in amount the rent reserved; and hence nothing came to the defendants' hands to be divided among his creditors. (Toller, 143, 279; *Rubery* v. *Stevens*, 4 Barn. & Ad., 241, and note *a;* Wms. on Exrs., 4 Am. ed., 1489, 1490.) It was against the plaintiff's protest that the surrogate took jurisdiction of the rents collected, and, without right, distributed them. The conclusion that the plaintiff was entitled to recover was also right. Upon that point the authorities were, as BRONSON, J., said *In re Galloway* (21 Wend., 33), all one way. It is not so clear that the referee

was right in ordering judgment for a sum exceeding the amount received for rent; but upon this point no exception was taken, and hence the question is not up for consideration. The judgment must be affirmed.

EARL, C. The lease from Quackinboss to Charles Knox provided that the lessee should have the privilege of remaining in possession after the specified time, for the further term of five years, at the yearly rent of $1,500. On the 10th day of February, 1858, Charles Knox assigned this lease to Edward Knox, who entered into possession of the premises, and remained in possession until May 11, 1863, when he died. After his death the defendants, as his administrators, took possession of the premises, and let them and collected the rents. I have no doubt that the privilege, under the lease, of extending the term, passed to Edward Knox as assignee. And the occupancy of the premises by him and his administrators, after the expiration of the original term, furnished *prima facie* evidence that he had availed himself of this privilege, and that the premises continued to be occupied according to the terms of the lease. This lease, upon the death of Edward Knox, passed to his administrators, and became a portion of the assets in their hands. If the lease was worth anything, it was their duty to sell it, or to assume control of the premises and collect the rents, or in some form secure the profits thereof. If they either took possession of the premises or received the profits or collected the rents thereof, they became personally liable for the rent, to the extent of the rents or profits received by them. Administrators do not become personally liable for the full amount of the rent reserved in the lease, unless the rent or profits of the premises are at least equal to the amount of the rent. A landlord, after the death of his tenant, always has these remedies for rent accruing after the death: He may collect the same of the estate of the deceased, or he may collect the same of the administrators or executors personally to the extent of the rents or profits received by them of the premises; and he

may collect of the executors or administrators so much of the rent as they are personally liable for, and the balance, of the estate. This personal liability of the administrators and executors grows out of the fact that it is their duty to receive the rents and profits, and to the extent of the rent, apply them in payment thereof, instead of placing them among the general assets. That the rents and profits are not sufficient to pay the rent is, however, strictly matter of defence, as the law *prima facie* supposes them to be sufficient. These principles are abundantly established by the authori-ities. *Remnant* v. *Bremridge*, 8 Taunt., 191; *Matter of Galloway*, 21 Wend., 32; *Fisher* v. *Fisher*, 1 Bradf., 335; Taylor's Landlord and Tenant, 211; Williams on Executors, 1491.) In *Matter of Galloway*, COWEN, J., says: "It is perfectly well settled that when rent or money for breach of covenant falls due after the death of the testator or intestate, and the executor or administrator enters, or, which is the same thing, receives the rents and profits, he is chargeable in the *debit* and *detinet* or directly on the covenant as an assignee, and need not be named as executor or administrator. In certain special cases he may, it is true, defend in fact, as when he has no assets, and the land is in truth worth less than the sum due. But this is strictly matter of defence; *prima facie*, the land is worth more."

Here the defendants did not allege in their answer and did not attempt to prove upon the trial that the lands were worth less, or that the rents collected by them were less than the rent reserved, and hence there was no error in awarding judgment against them personally for the full amount of the rent, unless the proceedings in the Surrogate's Court of New York in some way, furnish them a defence.

As a creditor of the estate of the intestate, the plaintiff was a proper party to the accounting. He became such by the service upon him of the citation. His position was not altered because he appeared and filed objections. He pre-sented no claim, litigated nothing and withdrew from the proceeding. There was no adjudication upon his claim for

rent.  He was a proper party, as he was a creditor of the estate, having the right to look to the estate for the payment of his rent.  His claim against the defendants personally was in no way involved and could in no way be brought in question in that proceeding, and he is therefore not precluded by it. (2 R. S., 94, § 65.)

The judgment should therefore be affirmed with costs.

All concur, except LEONARD, C., not sitting.

Judgment affirmed.