## WALSH v. CONNECTICUT MUT. LIFE INS. CO. OF HARTFORD, CONN.
### No. 7653.

District Court, E. D. New York.
Jan. 30, 1939.

William B. Codling, of Northport, and William G. Bushell, of New York City, for plaintiff.

Clark & Baldwin, of New York City (John Kirkland Clark and Ganson J. Baldwin, both of New York City, of counsel), for defendant.

MOSCOWITZ, District Judge.

This is a motion made by the defendant for the following relief:

"1. For summary judgment in favor of the defendant, dismissing the complaint upon the merits (under Rule 56 of the Federal Rules of Civil Procedure).

"2. In the alternative, that the Court, by examining the pleadings and evidence before it, and by interrogating counsel, shall ascertain what material facts exist without substantial controversy, and what material facts, if any, are actually and in good faith controverted, and that the Court make an order specifying the facts that appear without controversy, and directing such further proceedings in the action as are just (under Rule 56(d) of the Federal Rules of Civil Procedure).

"3. In the alternative, for an order determining which, if not all, of the matters set forth in the defendant's Request for Admissions shall be deemed admitted, upon the ground that the plaintiff has not served or filed a sworn statement either denying specifically the matters of which an admission is requested, or setting forth in detail the reasons why she cannot truthfully either admit or deny those matters (as required by Rule 36 of the Federal Rules of Civil Procedure)."

The plaintiff, the widow of Samuel A. Walsh, brought this action for double indemnity benefits under a policy of life insurance, upon the ground that the death of her husband, the insured, was caused solely by accidental means.

The policy of insurance provides for the payment of double the amount of the policy in the event that the insured's death "resulted, directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means." The policy further provides that the insurance company "shall not be liable for any payment under this double indemnity provision if such death shall directly or indirectly result * * * from any violation of law by the insured, * * * from poisoning or infection other than that occurring simultaneously with and in consequence of bodily injury, from bodily or mental infirmity, or from disease of any kind."

The policy contains an incontestable clause which reads as follows: "Incontestability. This Policy will be incontestable after it shall have been in force during the lifetime of the Insured for one year from its date of issue, except for non-payment of premium and except as to provisions and conditions relating to benefits in the event of total and permanent disability and those granting additional insurance specifically against death by accident; but if the age of the Insured has been misstated any sum payable hereunder shall be such as the premium paid would have purchased at the correct age. The age of the Insured will be admitted by the Company at any time upon satisfactory proof." The policy by its terms became incontestable after one year. This did not effect the double indemnity provision as it was always contestable. Steinberg v. New York Life Insurance Company, 263 N.Y. 45, 188 N.E. 152, 90 A.L.R. 642; Manhattan Life Insurance Company v. Schwartz, 274 N.Y. 374, 9 N.E.2d 16; Equitable Life Assurance Society v. Kushman, 276 N.Y. 178, 11 N.E.2d 719.

The defendant in its first defense alleges that the insured made certain statements, answers, and warranties in his application for the policy which were false, fraudulent, and untrue; that the application for the policy contained a provision that the only personal injury which the insured had ever sustained was a fractured right wrist in 1910 and that he had not consulted with, or been attended by, any physicians or surgeons during the seven years preceding the application, for anything not mentioned in the application and that he had never used beer, wine, or other alcoholic stimulants to excess and that he had never been treated for alcoholism. It is further alleged in the first defense that the application for the policy failed to disclose that the insured "had had personal injuries, to wit, a fracture of the lower right jaw in or about October, 1922, and an injury to his left elbow in June, 1924, causing an acute bursitis, and a transverse lacerated wound of the left side of the face below the eye, with contusions of the face and eye, in July, 1924, and he had consulted with, and had been attended by, physicians and surgeons for

said injuries; and he had used beer, wine and other alcoholic stimulants to excess; and he had been treated for alcoholism."

The second defense is in effect the same as the first defense, except the alleged misstatements in the application are pleaded as material misrepresentations.

The third defense alleges that the policy contains the following provision: "Risks Not Assumed. The Company shall not be liable for any payment under this double indemnity provision if such death shall directly or indirectly result from engaging as a passenger or otherwise in aeronautic or submarine operations, from war, riot or insurrection or from any act incident thereto, from military or naval service in time of war, from any violation of law by the Insured, from self-destruction while sane or insane, from police duty in any police organization, from poisoning or infection other than that occurring simultaneously with and in consequence of bodily injury, from bodily or mental infirmity, or from disease of any kind." It further alleges that the injuries sustained by the insured resulted directly or indirectly from violations of law, including a violation of the Penal Law of the State of New York, Consol. Laws, c. 40, Section 722, relating to disorderly conduct, which reads as follows:

"§ 722. Disorderly conduct. Any person who with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned, commits any of the following acts shall be deemed to have committed the offense of disorderly conduct:

"1. Uses offensive, disorderly, threatening, abusive or insulting language, conduct or behavior;

"2. Acts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others."

In the third defense the defendant further alleges that the death of the insured resulted directly or indirectly from various causes, including chronic and acute alcoholic poisoning, not occurring simultaneously with and in consequence of bodily injury; and from mental and bodily infirmities and diseases, including chronic and acute alcoholism, delirium tremens and pneumonia.

Any one of the three defenses, if established, would defeat plaintiff's recovery. See Charlton v. Metropolitan Life Insurance Company, 202 App.Div. 814, 195 N.Y.S. 64; Sparer v. Travelers' Insurance Company, 185 App.Div. 861, 173 N.Y.S. 673; Klapholtz v. New York Life Insurance Company, 218 App.Div. 695, 219 N.Y.S. 64; Ginsburg v. Pacific Mutual Life Insurance Company of California, 2 Cir., 89 F.2d 158.

Pursuant to Rule 36 of the Rules of Civil Procedure for the District Courts of the United States, 28 U.S.C.A. following section 723c, the defendant's attorneys served upon plaintiff's attorneys their "request for admissions" regarding the insured's injuries and alcoholism prior to the application for insurance and regarding the violation of law shortly before his death. These "requests for admissions" are as follows:

"The defendant, The Connecticut Mutual Life Insurance Company, requests the plaintiff, Mabelle Walsh, to make the following admissions for the purpose of this action only, and subject to all pertinent objections to admissibility, which may be interposed at the trial:

"That each of the following statements is true:

"1a. In October, 1922, Samuel A. Walsh (plaintiff's deceased husband) sustained a personal injury, to-wit, a fracture of his jaw.

"1b. Said fracture was on the right side of the lower jaw.

"1c. Said Samuel A. Walsh consulted Dr. Henry S. Dunning of New York, in October, 1922.

"1d. Said Samuel A. Walsh consulted said Dr. Dunning in October, 1922, for said fracture of the jaw.

"1e. Exhibit A, annexed hereto, is a correct copy of said Dr. Dunning's record of his treatments of said Samuel A. Walsh in October and November, 1922.

"1f. The facts stated in Exhibit A, annexed hereto, are correct.

"1g. In or about October, 1922, or thereafter, said Samuel A. Walsh informed the plaintiff that he had received an injury to his jaw.

"1h. Said Samuel A. Walsh informed the plaintiff that such injury was a fracture of his jaw.

"1i. Said Samuel A. Walsh informed the plaintiff that he sustained said injury to his jaw by being struck by a person's fist.

"1j. Said Samuel A. Walsh informed the plaintiff that he sustained said injury to his jaw while he was intoxicated by the use of alcoholic stimulants.

"1k. Said Samuel A. Walsh informed the plaintiff that he sustained said injury while engaged in a fight or brawl.

"1l. Said Samuel A. Walsh informed the plaintiff that he had been treated by Dr. Dunning for said injury.

"2a. In June, 1924, said Samuel A. Walsh sustained a personal injury, to-wit, an acute bursitis of an elbow.

"2b. Said injury was to the left elbow.

"2c. Said Samuel A. Walsh consulted Dr. Wilbur C. Travis, a physician, of Northport, Long Island, in June, 1924.

"2d. Said Samuel A. Walsh was treated by said Dr. Travis in June, 1924, for said bursitis of said elbow.

"2e. In or about June, 1924, or thereafter, said Samuel A. Walsh informed the plaintiff that he had received an injury to his elbow.

"2f. Said Samuel A. Walsh informed the plaintiff that he had been treated by said Dr. Travis for such injury.

"3a. In July, 1924, said Samuel A. Walsh had a personal injury, to-wit, a transverse lacerated wound of the left side of his face below the eye, with contusions of the face and eye.

"3b. Said Samuel A. Walsh consulted Dr. Roger Dexter and Dr. Wilbur C. Travis, physicians of Northport, Long Island, in July, 1924.

"3c. Said Samuel A. Walsh was treated by said Dr. Dexter and Dr. Travis in July, 1924, for said injuries to his face and eye.

"3d. Said Samuel A. Walsh informed the plaintiff that said injuries were sustained while he was intoxicated by the use of alcoholic stimulants.

"3e. Said Samuel A. Walsh informed the plaintiff that he sustained said injuries in a fight or brawl.

"3f. Said Dr. Dexter treated said Samuel A. Walsh in July, 1924, when said Samuel A. Walsh was intoxicated by the use of alcoholic stimulants.

"3g. Said Samuel A. Walsh was so intoxicated by the use of alcoholic stimulants when treated by said Dr. Dexter in July, 1924, that said Samuel A. Walsh fought with said Dr. Dexter.

"3h. Said Samuel A. Walsh was so intoxicated by the use of alcoholic stimulants that he was struggling with plaintiff when said Dr. Dexter arrived on that occasion.

"3i. Said Samuel A. Walsh used abusive language to plaintiff and to said Dr. Dexter on that occasion, due to said Samuel A. Walsh's being intoxicated by the use of alcoholic stimulants.

"4a. Said Samuel A. Walsh had used beer, wine or other alcoholic stimulants to excess prior to December, 1924.

"4b. He had done so on many occasions.

"4c. He had done so for many years.

"5a. Prior to December, 1924, said Samuel A. Walsh had been treated by physicians for the excessive use of alcoholic stimulants.

"5b. Said Samuel A. Walsh had become a chronic alcoholic prior to December, 1924.

"6a. One of the causes of the death of Samuel A. Walsh was alcoholism.

"6b. One of the causes of the death of Samuel A. Walsh was acute alcoholic poisoning.

"6c. One of the causes of the death of Samuel A. Walsh was chronic alcoholic poisoning.

"6d. One of the causes of the death of Samuel A. Walsh was delirium tremens.

"6e. One of the causes of the death of Samuel A. Walsh was pneumonia.

"7. The death of Samuel A. Walsh resulted, directly or indirectly, from various causes, including:

"(a) Alcoholism

"(b) Acute alcoholic poisoning

"(c) Chronic alcoholic poisoning

"(d) Delirium tremens

"(e) Pneumonia

"8. On November 30th, 1937, the following persons were guests at the home of Samuel A. Walsh:

"(a) A man and his wife (hereinafter referred to as Mr. and Mrs. H)

"(b) Mr. H's father

"(c) Mrs. H's mother"

The language in "request for admissions" designated 9 and 10 is so obscene and offensive that it will not be repeated in this opinion. Any one interested may see the exact language by referring to the

requests 9 and 10 which are on file in the Clerk's office.

"11. Said language mentioned in paragraphs 9 and 10:

"(a) Was unjustified

"(b) Did not correctly describe the character of the persons referred to

"(c) Was offensive

"(d) Was disorderly

"(e) Was abusive

"(f) Was insulting

"12. Samuel A. Walsh used said language mentioned in paragraphs 9 and 10 in the presence of:

"(a) Mr. H

"(b) Mrs. H

"(c) Mr. H's father

"(d) Mrs. H's mother

"(e) Mrs. Walsh, the plaintiff

"13. After Samuel A. Walsh had used such language, Mr. George Hoyt struck Samuel A. Walsh on the jaw."

■ These "requests for admissions" are pertinent on the three defenses and, if answered in the affirmative, would bar plaintiff's recovery on the policy. Instead of complying with the "request for admissions", the plaintiff has served a verified statement which is designated "answer to requests for admissions", which reads as follows:

"The plaintiff, Mabelle Walsh, in answer to the requests of the defendant as to the truth of certain statements, answers as follows:

"1. Plaintiff states that she is not required to deny or admit that the statements contained in requests designated '1a' to and including '7e' of defendant's request for admissions, are true, upon the ground that said statements concern confidential communications between husband and wife.

"2. Plaintiff states that she is not required to deny or admit that the statements contained in requests designated '1g' to '13' inclusive of defendant's request for admissions, are true, upon the ground that said requests do not concern requests by the defendant for the admission by plaintiff of the genuineness of any relevant documents described in and exhibited with the request for admissions or of the truth of any relevant matters of fact set forth therein.

"3. Plaintiff also states, with reference to requests numbered '1e' and '1f', that there is nothing in the exhibit annexed to defendant's requests for admissions, that identifies said exhibit as a record of Dr. Henry S. Dunning."

This form of "answer to request for admissions" does not comply with Rule 36 of the Rule of Civil Procedure for the District Courts of the United States which provides:

"Rule 36. Admission Of Facts And Of Genuineness Of Documents.

"(a) Request for Admission. At any time after the pleadings are closed, a party may serve upon any other party a written request for the admission by the latter of the genuineness of any relevant documents described in and exhibited with the request or of the truth of any relevant matters of fact set forth therein. Copies of the documents shall be delivered with the request unless copies have already been furnished. Each of the matters of which an admission is requested shall be deemed admitted unless, within a period designated in the request, not less than 10 days after service thereof or within such further time as the court may allow on motion and notice, the party to whom the request is directed serves upon the party requesting the admission a sworn statement either denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he cannot truthfully either admit or deny those matters.

"(b) Effect of Admission. Any admission made by a party pursuant to such request is for the purpose of the pending action only and neither constitutes an admission by him for any other purpose nor may be used against him in any other proceeding."

■ If the pleadings show that the facts requested are not relevant, the party served is not required to make an admission of the facts. However, if the facts are relevant any party served is deemed to have admitted the matters requested unless within a period designated in the request, not less than ten days after the service thereof or within such further time as the Court may allow on motion and notice, the party to whom the request is directed serves upon the party requesting the admission a sworn statement either denying specifically the matters of which

an admission is requested or setting forth in detail the reasons why he cannot truthfully either admit or deny those matters.

■■■ The plaintiff makes three claims with respect to the "request for admissions". In paragraph one of "answer to request for admissions" plaintiff states that she is not required to deny or admit that the statements contained in the requests designated 1a to and including 7e are true upon the ground that said statements concern confidential communications between husband and wife. Plaintiff would not be divulging a confidential communication by admitting that her husband suffered a fracture of his jaw. Such an admission is not testimony, and is made solely for the purpose of this action and does not constitute an admission by her for any other purpose nor may it be used against her in any other proceeding.

■■ Paragraph three of plaintiff's "answer to request for admissions" states with reference to requests numbered 1e and 1f, that there is nothing in the exhibit annexed to defendant's "request for admissions" that identifies said exhibit as a record of Dr. Henry S. Dunning. All the plaintiff is required to state under 1e and 1f is whether Dr. Dunning's record of the treatment is valid. If she cannot so state, then pursuant to Rule 36 she may set forth in detail the reasons why she cannot truthfully either admit or deny the validity of this record.

Plaintiff refused to answer 1g to 13 of defendant's "request for admissions" claiming that she is not required under Rule 36 to deny or admit these "requests for admissions" upon the alleged ground that the requests do not concern the genuineness of the documents or of matters in documents. "Request for admissions" 1g to 13 require a construction of that portion of Rule 36 which reads as follows: "At any time after the pleadings are closed, a party may serve upon any other party a written request for the admission by the latter of the genuineness of any relevant documents described in and exhibited with the request or of the truth of any relevant matters of fact set forth therein. * * *"

■■ It is the plaintiff's contention that the word "therein" relates to "any relevant matters of fact set forth" in the documents and not to other matters of fact relevant to the pleadings contained in the "request for admissions". This is a strained and unjustifiable construction. To say that the word "therein" relates to the facts set forth in the documents would make it meaningless. The word "therein" in the context undoubtedly refers to any matters of fact relevant to the pleadings and contained in the request. It is beyond reason to assume that the Advisory Committee of the Supreme Court would use futile, useless and unnecessary words.

The construction that has been placed upon Rule 36 in this opinion is borne out by the interpretation placed upon it by Professor Sunderland, a member of the Advisory Committee of the Supreme Court, at the Institute on Federal Rules held in Cleveland, Ohio, in July, 1938, under the auspices of the American Bar Association, in which he stated:

"A very extensive discovery by way of admissions of particular facts and documents is provided for by Rule 36. Under that rule any party may serve on any other party a request for the admission of any facts or the genuineness of any designated documents, and upon such request they will be deemed admitted, unless the party served with notice shall within ten days serve a sworn statement upon the party requesting the admission specifically denying the matters specified in the request or stating why he cannot either admit or deny them.

"The usual statute or rule on admissions requires affirmative action to constitute the admission, but under this rule affirmative action is required to avoid the admission. There must be, therefore, a sworn statement specifically denying the facts which the other party requests should be admitted or the admissions will be deemed to have taken place. * * *"

This construction is further indicated by the underscored language of Subdivision (c) of Rule 37 of the Rules of Civil Procedure for the District Courts of the United States which provides: "If a party, after being served with a request under Rule 36 to admit the genuineness of any documents *or the truth of any matters of fact,* serves a sworn denial thereof and if the party requesting the admissions thereafter proves the genuineness of any such document *or the truth of any such matter of fact,* he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making such proof, including reasonable

attorney's fees. Unless the court finds that there were good reasons for the denial or that the admissions sought were of no substantial importance, the order shall be made."

■ These Rules of Civil Procedure for the District Courts of the United States are simple and are intended to promote and not to obstruct the administration of justice and thus enable the Court to do substantial justice rather than to decide cases upon technicalities which have no relationship whatever to the rights of the parties to the litigation.

This case illustrates the wisdom of these new Rules. If this plaintiff answers affirmatively defendant's "request for admissions" the defendant will be entitled to a judgment without delay. If, however, the useless and futile construction which the plaintiff urges be placed upon Rule 36, that the plaintiff is not required to deny or admit the truth of any relevant matters of fact set forth in the "pleadings", that would delay the trial and cause the defendant unnecessary expense. The purpose of Rule 36 is to require the party requested to "specifically" admit or deny facts set forth in the request if relevant to the pleadings. Certainly, here the facts requested by the defendant are relevant.

The Court should not engage in a hair-splitting construction of these Rules which would destroy their efficacy, but should endeavor to construe them as they were intended—a simple set of Rules designed to promote the true administration of justice.

Rule 36 provides a drastic remedy, that the matters requested for admission shall be deemed admitted unless within a period designated in the request, not less than ten days after service thereof or within such further time as the Court may allow on motion and notice, the party to whom the request is directed serves upon the party requesting the admission a sworn statement either denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he cannot truthfully either admit or deny those matters.

■ The plaintiff having failed to comply with this Rule the Court would be authorized to grant a summary judgment under Rule 56 of the Rules of Civil Procedure for the District Courts of the United States as the facts alleged in the complaint stand admitted. Subdivision (c) of Rule 37 of the Rules of Civil Procedure for the District Courts of the United States does not prevent the entry of a summary judgment. This Rule provides that, if the party served with the request for admission, denies the genuineness of the documents or the truth of any matters of fact and it is subsequently proved by the party requesting the admissions, that party may upon motion apply to the Court for an order requiring the party who has refused to comply with the request to pay the other party reasonable expenses incurred in making such proof and also reasonable attorney's fees unless the Court finds that there was justification for the refusal to comply with the request.

■ In view of the fact that the Rules only became effective in September, 1938, and where the litigants are acting in good faith and are seeking a construction of the Rules, for the present and until the members of the Bar have had ample opportunity to familiarize themselves with the Rules, the drastic remedy of summary judgment should not be imposed but an opportunity should be given to the litigants to comply with the Rules.

For the reasons stated in this opinion the defendant is entitled to summary judgment. However, I am inclined to believe that it will not do violence to the Rules if the plaintiff be given an opportunity to move on notice for further time within which to comply with defendant's "request for admissions". If that motion be denied an order may be entered granting the defendant summary judgment. If that motion be granted then an opportunity will be afforded the plaintiff under Rule 56 relating to summary judgments to submit opposing affidavits to the motion made herein for summary judgment and the Court will, pursuant to Rule 56, at the hearing of the motion for summary judgment "by examining the pleadings and the evidence before it and by interrogating counsel, * * * if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted."

Settle order on notice.