**SMYTH v. KAUFMAN et al.**
**In re J. B. KOPLIK & CO.**
**No. 328.**

Circuit Court of Appeals, Second Circuit.

Aug. 7, 1940.

Harold Flatto, of New York City, for defendants-appellants.

Joseph Allentuck, of New York City (Bernard L. Seligman, of New York City, of counsel), for plaintiff-appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This action was brought by the trustee in bankruptcy of J. B. Koplik & Co. for the recovery of sums paid to the defendants and allegedly voidable and recoverable by the trustee in bankruptcy as preferences under Section 60, sub. b, of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. b. The defendants are the executors under the will of Beccie Baruch, and they were sued both as individuals and in their representative capacity. Judgment was given for the plaintiff, and the defendants appeal.

J. B. Koplik & Co., the bankrupt (hereafter referred to as Koplik), was a jewelry

and pawnbroking establishment which had long been in business. On January 2, 1937, Koplik issued to one Beccie Baruch its renewal note, payable in one year, in the sum of $3,700. Beccie Baruch died on August 7, 1937; under her will letters testamentary were issued to the defendants Bertram L. Kaufman and I. Morton Brenner. On January 3, 1938, after due notice, the defendants presented for payment the note owned by the decedent. The note was dishonored and was protested. The executors were told that Koplik was hard pressed for cash since an auction of its stock in trade had not been had for a long time because the market for jewelry was depressed. Although assurances were given that Koplik was "working out quite a number of new deals for capital" the defendants began suit on the note in the Supreme Court of New York. No answer was filed by Koplik in that proceeding, and on February 10, 1938, judgment by default was entered for the executors, the defendants herein.

On February 8, 1938, after the time for Koplik to answer in the state court proceeding had expired, an agreement to settle and to discontinue the suit was reached by the parties. Under the agreement Koplik delivered to the executors one check for $723.76 dated February 8, 1938, and another check for $500 dated February 15, 1938. Five notes in the sum of $500 each, due February 25, March 7, March 17, March 28 and April 6, 1938, were executed by Koplik and indorsed by its officers, and were also delivered to the executors. The agreement was to be null and void and judgment could be entered in the amount then due in the event that either of the checks were not paid or that the notes were not executed and delivered.

The first check for $723.76 was presented at the bank and was returned because of insufficient funds. Koplik then borrowed approximately $500 from its landlord, one Eversley Childs, and with this, together with other funds, paid the check at the office of the attorney for the executors. On February 14, the day before the second check was to be due, Koplik informed the attorney for the executors that there would not be funds in the bank sufficient to cover the check, but that "if he would send the check up to Mr. Childs' office, why, Mr. Childs would give him $500 for the check." This second check was paid at Mr. Childs' office on February 15, 1938.

On March 2, 1938, an involuntary petition in bankruptcy was filed against Koplik and on the 15th of March Koplik was adjudicated a bankrupt. The plaintiff was appointed trustee in bankruptcy and sued the defendants individually and as executors to recover the alleged two preferential payments. The district court found that the bankrupt was insolvent at the dates of both the payments, that the executors had reasonable cause to believe that the bankrupt was then insolvent, and that the effect of the payments was to enable the executors to obtain a greater percentage of their debt than other creditors of the same class. The payments were therefore held to be preferences and to be recoverable from the defendants individually and as executors.

The defendants assign error in the finding that they had reasonable cause to believe that Koplik was insolvent at the time when the payments were made. They point to the long existence of the Koplik concern, to the stablity of pawnbroking establishments, and to the Jewelers' Board of Trade Rating Book, which gave Koplik a credit rating up to $1,000,000 at "slow pay". There was testimony that this was considered a "marvelous account" in the trade, as well as testimony that Koplik was considered a safe concern by members of the trade. However, the credit manual stated that Koplik did not make a practice of issuing statements and there was much evidence to inform the executors that the bankrupt was in financial difficulties. Koplik was unable to pay its renewal note at maturity, although it was given ample notice that payment would be required and that no further extension would be granted. Moreover in spite of the fact that it was claiming to have ample stocks of merchandise it had defaulted on its note and had allowed judgment to go against it. The check for $723.76, dated February 8, was dishonored at the bank, and the executors were informed that most of the funds used to pay it, and all of the funds used to pay the second check, had to be borrowed from the bankrupt's landlord. It cannot be said that there was not evidence to support the finding of the trial court that the executors had reasonable cause to believe that Koplik was insolvent.

Next, it is contended by the defendants that there is no support for the finding that Koplik was in fact insolvent at the time of the payments. This finding might well be supported by the evidence re-

lied on to show reasonable cause to believe, and by the collapse of Koplik only three weeks after the first payment. But in any event, the fact of insolvency stands admitted because of the defendants' failure to deny it after being served by the plaintiff with a notice to admit that fact. Under Rule 36(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, "a party may serve upon the other party a written request for the admission by the latter of the genuineness of any relevant documents described in and ,exhibited with the request or of the truth of any relevant matters of fact set forth therein." The executors contend that the last word of the sentence, the word "therein," refers to the "documents" mentioned in the rule and not merely to the "request" to admit, and that therefore they are not bound by a request to admit a fact unrelated to documents, such as the fact of insolvency. However, the opinion both of the courts and of commentators has been uniform that under Rule 36(a) a "matter of fact" not related to any document may be presented to the other party for admission or denial. Walsh v. Conn. Mutual Life Ins. Co., D.C.E.D.N.Y., 26 F.Supp. 566; McCrate v. Morgan Packing Co., D.C.N.D. Ohio, 26 F.Supp. 812; Nekrasoff v. United States Rubber Co., D.C.S.D.N.Y., 27 F. Supp. 953; Hanauer v. Siegel, D.C.N.D. Ill., 29 F.Supp. 329; Booth Fisheries Corp. v. General Foods Corp., D.C.D.Del., 27 F. Supp. 268; Modern Foods Process Co. v. Chester Packing & Provision Co., D.C.E.D. Pa., 30 F.Supp. 520. See Moore's Federal Practice, p. 2652; Proceedings of the Institute on Federal Rules, pp. 103, 142, 263. Under the rule, therefore, the defendants cannot now controvert the fact of insolvency at the time of the payments.

■ Appellants further argue that $1,-000 of the $1,273.76 alleged to represent preferential payments cannot be recovered because it was from funds that were never a part of the bankrupt's assets. As already stated, the first check for $723.76 given by the bankrupt as part of the settlement of the claims of the defendants was returned for insufficient funds. The check was then paid with $500, furnished by Childs to Koplik, and $223.76 already in the latter's hands. We can discover nothing indicating that Childs loaned this $500 on condition that it should be applied to this particular creditor. While he apparently knew that it would be used for this purpose, so far

as we can see he made the loan generally. The case was not like one where a surety pays an obligation of his debtor in order to relieve himself from a claim and thereby becomes subrogated to the creditor's rights against his principal. National Bank of Newport v. National Herkimer Bank, 225 U.S. 178, 32 S.Ct. 633, 56 L.Ed. 1042; Bielaski v. National City Bank, 2 Cir., 68 F.2d 723. Accordingly, the payment was not protected under the doctrine of those cases holding that a creditor who receives payment from a surety of the bankrupt, or from one who lends to the bankrupt only for the specific purpose of paying a certain creditor, has not received a voidable preference, and it seems clear that the payment of the first check for $723.76 was an unlawful preference.

■ The payment of the second check for $500 was made in a different way. Koplik notified the executors on the day before the check was to be due that "we would not have sufficient money in the bank and that we had been able to get our landlord * * * to again help us out and if he would send the check up to Mr. Childs' office * * * Mr. Childs would give him $500 for the check." The check was sent by the creditor to Childs' office, where it was paid in cash on the day that it became due. We cannot see any essential difference between this payment and the first one. The only interest Childs had in lending money to Koplik was to keep the latter in business so that its lease would continue and its rent would be paid. There is no evidence that he conditioned this loan, any more than the first one, upon the payment of any particular creditor or that he cared who was paid. We believe the arrangement was such that Koplik rather than Childs designated the creditor to be paid and controlled the application of the loan which it secured from its landlord. The existence of this control determines whether the payments were preferential transfers by the bankrupt or were payments by a third party who did not make the loans generally but made them only on condition that a particular creditor receive the proceeds. The transfer here was not of special funds designated as such by the lender which could never have become generally available to all of the creditors.

The defendants rely on Grubb v. General Contract Purchase Corp., 2 Cir., 94 F.2d 70, as showing that the payments by Childs could not be recovered by the trustee. In

that case, Judge Patterson in the district court had found that the payments were earmarked by the lenders and that consequently they never became part of the bankrupt's free assets. Whatever may have been the theory on which part of that decision was affirmed on the particular facts there present, we think that the loans by Childs to Koplik were unconditional, that the proceeds became part of the bankrupt's free assets, and that the employment of the loan from Childs to extinguish the indebtedness to the executors constituted a preferential transfer. Under these circumstances, it does not matter that the money used to take up the second check never actually came into the hands of Koplik.

 The remaining objection raised by the defendants is to the judgment against the executors, Kaufman and Brenner, individually. This objection seems to us sound. They received the payments as executors because their claim against Koplik was based on a note held by their decedent. The cause of action on which they received the payments was not founded on a contract made by them when acting as executors, which courts have generally treated as vesting rights in the executors individually with an obligation to account for its disposition, but their rights were legally vested in them as executors continuing the persona of the decedent. Cf. Posner v. Posner, Sup., 189 N.Y.S. 156. The New York decisions which hold that an executor or administrator who goes into possession of premises under a lease to the decedent becomes personally liable for the rent and upon the covenants of the lease we believe to rest upon the fact that by his acts the lease becomes his personal contract. Legget v. Pelletreau, 213 N.Y. 237, 107 N.E. 509; Miller v. Knox, 48 N.Y. 232; Matter of Galloway, 21 Wend. 32, 34 Am.Dec. 209; Howard v. Heinerschit, 16 Hun 177. It has, however, been held that although the executor takes possession he is only personally liable for rent to the extent of the net rents and profits which he has collected from the premises. Miller v. Knox, 48 N.Y. 232, 237; Remnant v. Brenridge, 8 Taunt. 191.

In a situation like the present, we do not regard the individuals who happen to be executors as agents for the estate who can escape personal liability only by proving that they have paid out the receipts for estate purposes. Compare Carson v. Federal Reserve Bank, 254 N.Y. 218, 172 N.E.

475, 70 A.L.R. 435. Furthermore, although the defendants received an unlawful preference they did not become tort feasors, Duell v. Brewer, 2 Cir., 92 F.2d 59, 112 A.L.R. 1246, and did not thereby bring themselves within the rule of individual liability of executors for their torts.

Moreover, Section 60, sub. b of the Bankruptcy Act, under which recovery is sought, only entitles the trustee to recover from the "person receiving it or to be benefited thereby * * * the property or its value." The defendants as individuals do not seem to fall within this statutory description. They have certainly not "benefitted" from the preference and by the rule of ejusdem generis the words "receiving it" seem to require some act other than receipt in a representative capacity in order to justify the imposition of individual liability. Duell v. Brewer, 2 Cir., 92 F.2d 59, 112 A.L.R. 1246. The same case would indicate that the broad definition of "person" in Section 1(19) of the Bankruptcy Act, 11 U.S.C.A. § 1(19), is to be limited by the language of Section 60, sub. b.

For the foregoing reasons the judgment is reversed and the complaint dismissed in so far as it affects the defendants individually, but the judgment is otherwise affirmed.