In re KEMP PACIFIC FISHERIES, INC., A Washington corporation, Debtor.

Thomas HANSEN, trustee of the Kemp Pacific Fisheries, Inc., bankruptcy estate, Plaintiff–Appellee,

v.

MacDONALD MEAT COMPANY, A Washington corporation, Defendant–Appellant.

No. 92–36631.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 14, 1993.

Decided Feb. 3, 1994.

Cheryl D. Carlson, Danial D. Pharris, Lasher Holzapfel Sperry & Ebberson, Seattle, Washington, for the defendant-appellant.

James L. Day, Bush Strout & Kornfeld, Seattle, Washington, for the plaintiff-appellee.

Before GOODWIN, CANBY and KOZINSKI, Circuit Judges.

PER CURIAM:

This is an action by a bankruptcy trustee to recover money paid to a creditor. The trustee, Thomas Hansen, argues that the payment in question was a preferential transfer and is avoidable under the Bankruptcy Code, 11 U.S.C. § 547(b). The bankruptcy court granted the trustee's motion for summary judgment and avoided the payment. The district court affirmed. The creditor, MacDonald Meat Company, appeals, alleging that the transaction was not a preferential transfer because no "interest of the debtor in property" was involved. For the reasons stated below, we affirm the decision of the district court.

## BACKGROUND

The following facts were found by the district court and are not in dispute. Kemp Pacific Fisheries owed MacDonald Meat Company over $115,000 for foodstuffs purchased by Kemp. Kemp had a line of credit with Philip Morris, and obtained a $484,657 loan to pay off a portion of the MacDonald debt and other operating expenses.

On February 15, 1989, Kemp Pacific Fisheries wrote MacDonald a check for $70,000. The check was honored by Seafirst the same day. The $484,567 loan from Philip Morris was deposited into the Seafirst account on February 17, 1989.

The only significant factual dispute between the litigants concerns the amount of money in Kemp Pacific Fisheries' checking account at the time Seafirst honored the check to MacDonald. MacDonald alleges that at the time the check was cashed, Kemp did not have any money in its account, and in fact had a deficit of $44,691.12. The trustee, Thomas Hansen, argues that the evidence is inconclusive on whether there was money in the account at the time the check was cashed. The trustee hypothesizes that a $120,000 check in favor of Industrial Indemnity, issued on February 14, 1989, may not have been cashed before February 17, 1989, and if not, there were sufficient funds in the account. Because we are reviewing a summary judgment against McDonald, we accept for purposes of decision its view that Kemp's account was overdrawn when the $70,000 check was cashed.

## STANDARD OF REVIEW

■ We review *de novo* the district court's grant of summary judgment in favor of Thomas Hansen. *Jones v. Union Pacific R.R.*, 968 F.2d 937, 940 (9th Cir.1992). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *cert. granted*, —— U.S. ——, 114 S.Ct. 543, 126 L.Ed.2d 445 (1993); *Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989).

## ANALYSIS

■ Under § 547(b) of the Bankruptcy Code, a trustee may recover certain transfers made by the debtor within 90 days before the bankruptcy petition was filed. A transfer by the debtor constitutes an avoidable preference if six elements are shown.[1] MacDonald concedes that five of those elements exist and disputes the district court's finding as to only the first element. MacDonald argues that the payment by Seafirst of Kemp's check to MacDonald for $70,000 did not constitute a "transfer of an interest of the debtor in property" as required by 11 U.S.C. § 547(b), depriving the estate of something that would otherwise be available for distribution to the other general creditors. In MacDonald's view, Seafirst is a third party that transferred its own funds to MacDonald when it honored the check despite a negative account balance.

■ The Bankruptcy Code does not define "interest of the debtor in property." In the absence of any controlling federal law, we look to state law to determine whether a certain asset constitutes property of the debtor. *Barnhill v. Johnson*, —— U.S. ——, ——, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992); *Mitsui Manufacturers Bank v. Unicom Computer Corp. (In re Unicom Computer Corp.)*, 13 F.3d 321 (9th Cir.1994) (looking to California law of constructive trusts to determine property of the debtor); *see also Danning v. Bozek (In re Bullion Reserve of North America)*, 836 F.2d 1214, 1217 (9th Cir.), *cert. denied*, 486 U.S. 1056, 108 S.Ct.

---

1. A preferential transfer consists of the following six elements: there must be (1) a transfer of an interest of the debtor in property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt; (4) made while the debtor was insolvent; (5) made on or within 90 days before the date of the filing of the petition; and (6) one that enables the creditor to receive more than such creditor would receive in a Chapter 7 liquidation of the estate. 11 U.S.C. § 547(b); *In re Smith*, 966 F.2d 1527, 1529 (7th Cir.), *cert. dismissed*, —— U.S. ——, 113 S.Ct. 683, 121 L.Ed.2d 604 (1992).

2824, 100 L.Ed.2d 925 (1988) ("property of the debtor" should be defined broadly). Washington courts have held that a bank makes a loan to its customer by allowing an account overdraft. *State v. Larson,* 119 Wash. 259, 205 P. 373 (1922); *Lynnwood Sand & Gravel v. Bank of Everett,* 29 Wash. App. 686, 630 P.2d 489 (1981). Generally, "courts have held that transfers by a debtor of borrowed funds constitute transfers of the debtor's property." *In re Smith,* 966 F.2d 1527, 1533 (7th Cir.), *cert. dismissed,* — U.S. —, 113 S.Ct. 683, 121 L.Ed.2d 604 (1992); *see also McCuskey v. National Bank of Waterloo (In re Bohlen Enterprises, Ltd.),* 859 F.2d 561, 567 (8th Cir.1988); *Smyth v. Kaufman (In re J.B. Koplik & Co.),* 114 F.2d 40, 42 (2d Cir.1940).

■ The "diminution of estate" doctrine has been developed to test whether a debtor controlled transferred property to the extent that he owned it:

> Essentially, the transfer must diminish directly or indirectly the fund to which creditors of the same class can legally resort for the payment of their debts, to such an extent that it is impossible for other creditors of the same class to obtain as great a percentage as the favored one.

4 *Collier on Bankruptcy* ¶ 547.03, at 547–26 (15th ed. 1993) (footnote omitted); *see also In re Bullion Reserve of North America,* 836 F.2d at 1217 ("Generally, property belongs to the debtor for purposes of § 547 if its transfer will deprive the bankruptcy estate of something which would otherwise be used to satisfy the claims of creditors.") However, an exception to the above general rule occurs when a third party lends money to a debtor *"for the specific purpose of paying a selected creditor."* *In re Smith,* 966 F.2d at 1533 (emphasis in original). This exception, known as the "earmarking doctrine," is justi-

fied by the fact that in such a case the funds neither are controlled by, nor belong to, the debtor. The money never becomes part of the debtor's assets; rather, the transaction merely substitutes one creditor for another without diminishing the value of the bankruptcy estate. *Grubb v. General Contract Purchase Corp.,* 94 F.2d 70, 72–73 (2d Cir. 1938).[2]

■ Most of the value of an asset inheres in the person who controls it. Thus, a key inquiry in the analysis of whether a third party transfer diminishes the value of the debtor's estate is the source of control over the new funds:

> When a debtor uses the funds of a third party to pay an obligation of the debtor the Court must look to the source of the control over the disposition of the funds in order to determine whether a preference exists. If the debtor controls the disposition of the funds and designates the creditor to whom the monies will be paid independent of a third party whose funds are being used in ... payment of the debt, then the payments made by the debtor to the creditor constitute a preferential transfer.

*Hargadon v. Cove State Bank (In re Jaggers),* 48 B.R. 33, 36 (Bankr.W.D.Texas 1985); *see also Coral Petroleum, Inc. v. Banque Paribas–London,* 797 F.2d 1351, 1358 (5th Cir.1986) ("the key to the resolution of this dispute centers on whether [the debtor] had any control of the [third party] collateral"); *Love v. First Interstate Bank of Montana,* 155 B.R. 225, 230 (Bankr.D.Mont.1993) ("The dispositive question is whether the Debtor had direct control of the funds.") As correctly pointed out by the district court, Seafirst did not exercise the requisite control over the funds or place any limits whatsoever

---

**2.** The earmarking doctrine is a creature of equity and was originally enunciated "in cases where the new creditor providing new funds to pay off the old creditor, was himself also obligated to pay that prior debt." *In re Bohlen,* 859 F.2d at 561. The doctrine has been extended to situations, as here, where the new lender is not a guarantor. *See Stonitsch v. Wood & Huston Bank (In re Borgman),* 48 B.R. 666 (Bankr. W.D.Mo.1986). More recently, courts have been reluctant to extend this doctrine beyond its origi-

nal boundaries, as "[t]he equities in favor of a guarantor or surety, the risk of his having to pay twice if the first payment is held to be a voidable preference, are not present where the new lender is not a guarantor himself." *In re Bohlen,* 859 F.2d at 566; *see also McGoldrick v. Juice Farms, Inc. (In re Ludford Fruit Products, Inc.),* 99 B.R. 18, 21 (Bankr.C.D.Cal.1989) ("I join with the *Bohlen* court in questioning this expansion of the earmarking doctrine beyond its original application.")

on the parties to whom Kemp Pacific Fisheries could present checks. There is no indication in the record that Seafirst provided this service because the presenter of the check was MacDonald, or in any way communicated to the debtor that the check would only be honored on condition that the presenter was MacDonald.

Implicit in MacDonald's claim that Seafirst was not obligated to honor the check to MacDonald is the assertion that control over disbursement of the funds rested in Seafirst, not MacDonald. The Seventh Circuit rejected this very assertion in the factually similar case of *In re Smith, supra*. In *Smith*, there were insufficient funds in the debtor's checking account to cover a check written by the debtor to one of his creditors. The bank granted the debtor a provisional credit based upon a deposit that had been made by the debtor but that had yet to clear. The creditor cashed the check within the 90 day preference period.

The Seventh Circuit upheld the district court's finding that the above transaction constituted a preferential transfer to the creditor, despite the creditor's argument that the money advanced by the bank was never "property of the debtor." The *Smith* court reasoned that

> [t]he exercise of control attendant to paying off a selected creditor clearly presupposes some power to disburse funds. But if, as the dissent seems to suppose, the power to disburse has to do with the ultimate source of funds, then no borrower would ever have the requisite control over borrowed funds.... Here the debtor simply took advantage of the bank's provisional credit policy to obtain a loan. He exercised control over the proceeds by designating a recipient and thus achieving payment. The fact that the Bank did not *have to* lend the funds (by making payment on the check) is beside the point, for lenders are never forced to lend money. When they do so, whether it is by "grace," or, as

here, as a matter of bank policy, the "borrowed money is the borrower's own money."

*In re Smith,* 966 F.2d at 1533 n. 9 (emphasis in original). We find the analysis of the *Smith* court compelling.[3] The judgment of the district court is **AFFIRMED**.

---

3. The *Smith* case involved a check-kiting scheme in which there were no funds in the debtor's bank account both before and after the transaction, forcing the Seventh Circuit to engage in mental gymnastics in order to find the necessary diminution of the debtor's estate. *Smith,* 966 F.2d at 1535. Here, Kemp Pacific Fisheries had already established a line of credit with Philip Morris, and thus had sufficient funds in its possession to cover Seafirst's grant of provisional credit.